[No. C055359. Third Dist. Mar. 4, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES MICHAEL SHORT, Defendant and Appellant.

**COUNSEL**

Wells, Small & Selke, Wells, Small, Fleharty & Weil and K. Thomas Smith, Jr., for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Alison Elle Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, P. J.**—Defendant Charles Michael Short was convicted of driving under the influence of alcohol and causing great bodily injury. The crime occurred while he was driving his employer's vehicle. As we will explain, the victim restitution order imposed in the criminal action must be offset by money the victim received from the employer's insurer to settle the personal injury civil action the victim filed against defendant and the employer. Defendant did not procure the insurance policy, his name was not listed in the policy, and he did not pay the premiums. However, the terms of the policy covered defendant while he drove his employer's vehicle, and the insurance settlement listed defendant as being released from any claims connected with the collision that caused the victim's injuries. Therefore, the insurance settlement paid to the victim is deemed to be restitution directly from defendant. (Pen. Code, § 1202.4, subd. (a)(1).)

### FACTS

While intoxicated with a blood-alcohol content of 0.29 percent, and driving his employer's vehicle, defendant Charles Michael Short collided with a car driven by Steven DeClusin. As a result of the collision, DeClusin lost his arm above the elbow and suffered numerous other injuries, including fractured ribs.

Defendant pled guilty to driving with a blood-alcohol content over 0.08 percent, and admitted that his blood-alcohol content exceeded 0.20 percent, that he caused great bodily injury, and that he had been previously convicted

of driving under the influence of alcohol. He was sentenced to four years four months in state prison and was ordered to pay fees, fines, and victim restitution to DeClusin in the sum of $450,042.65. (Pen. Code, § 1202.4, subds. (a)(1), (f).)

DeClusin and his wife later filed a civil action against defendant and defendant's employer, Northstate Recycling, Inc. (Northstate), seeking damages for medical bills, pain and suffering, lost wages, loss of consortium, and property loss.[1] To settle that lawsuit, Northstate's insurer paid the policy limits of two insurance policies totaling $3 million. In exchange, DeClusin and his wife executed a waiver of claims against defendant and Northstate.

Defendant then moved in his criminal case to reduce the victim restitution order by the amount of the settlement that the insurance company paid to DeClusin. The trial court noted that "the purpose of [the victim restitution order] in this case has been accomplished" because the insurance payment made the victim "whole for his economic losses" and that there was no longer any rehabilitative purpose to be served by the restitution order because it "saddled [defendant] with an almost insurmountable unsatisfied civil judgment on his credit record." Nevertheless, the court held that the offset was not "legally supportable" because defendant did not pay the insurance premiums, he was not listed by name as an insured under the policy, and the policy was procured not for defendant's advantage but solely for the benefit of defendant's employer. Defendant appeals.

## DISCUSSION

We agree with defendant that the victim restitution order in the criminal action should have been reduced by money the victim received as settlement of the civil action against defendant and his employer.

"[A] victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (Pen. Code, § 1202.4, subd. (a)(1); further section references are to the Penal Code.) Thus, "unless it finds compelling and extraordinary reasons for not doing so," the court in a criminal proceeding must require the defendant to make "full restitution" to a victim "in an amount established by court order, based on the amount of loss claimed by the victim . . . or any other showing to the court." (§ 1202.4, subd. (f).)

---

[1] Northstate was defendant's employer. Short's Scrap Iron & Metal, Inc. (Short's), was also named in the civil suit because Short's was the registered owner of the vehicle that defendant was driving when he collided with DeClusin. Northstate and Short's are owned by defendant's parents.

■ Even when a victim obtains a settlement from a company that insured the defendant for civil liability, the court in a criminal action may order the defendant to pay victim restitution. This is so because the victim "might rationally choose to accept an insurance settlement for substantially less than his or her losses rather than risk the uncertain . . . possibility that the defendant will pay the entire restitution amount" (*People v. Bernal* (2002) 101 Cal.App.4th 155, 163 [123 Cal.Rptr.2d 622] (hereafter *Bernal*)), and the "victim's willingness to accept the [insurance settlement] in full satisfaction for all civil liability, . . . does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society." (*Id.* at p. 162.)

However, when the victim has obtained a settlement payment from a company that insured the defendant for civil liability, the amount of the restitution order in a criminal action must be offset by money paid to the victim by the insurance company. (*Bernal, supra,* 101 Cal.App.4th at pp. 165–168.) The relationship between the defendant and the insurance company is such that the victim is deemed to have received the civil settlement payment " 'directly from the defendant' " within the meaning of section 1202.4, subdivision (a)(1). (101 Cal.App.4th at p. 168.)

Likening himself to the appellant in *Bernal,* defendant contends the trial court erred in refusing to apply the settlement payment as an offset to the restitution order.

The People seek to distinguish this case from the situation in *Bernal,* where the person convicted of a crime had procured the insurance, made the premium payments, and had a contractual right to have the payments made by the insurance company to the victim. (*Bernal, supra,* 101 Cal.App.4th at p. 168.) Here, the People point out, defendant did not apply for the insurance policy, he did not make the premium payments, and his name was not listed in the policy. Thus, the People argue, he "should not benefit" from the "fortuitous" fact that his employer had procured an insurance policy "covering" defendant's act.

The People cite *In re Tommy A.* (2005) 131 Cal.App.4th 1580 [33 Cal.Rptr.3d 103] (hereafter *Tommy A.*) and *People v. Hamilton* (2003) 114 Cal.App.4th 932 [8 Cal.Rptr.3d 190] (hereafter *Hamilton*) as support for their position. *Tommy A.* involved a conviction for hit and run driving resulting in property damage. The culprit was driving the vehicle of his mother's friend, whose insurance carrier "fully paid the victim under a settlement agreement for her economic losses . . . ." (*Tommy A., supra,* 131 Cal.App.4th at p. 1582.) *Hamilton* involved the shooting of a person who was working for the culprit and his mother. When the victim sued them in a civil action, the

mother's insurer settled the claim on her behalf. (*Hamilton, supra*, 114 Cal.App.4th at p. 935.) Both *Tommy A.* and *Hamilton* held that the victim restitution orders imposed in the criminal actions could not be offset by settlement payments in the civil actions because the culprits did not procure the insurance policies or pay the insurance premiums. (*Tommy A., supra*, at p. 1590; *Hamilton, supra*, at p. 942.) *Hamilton* added that the settlement was made only on the mother's behalf and did not mention the culprit. (*Hamilton, supra*, at p. 943.) Thus, those decisions held that the settlement payments did not qualify as "restitution directly from" the offender, within the meaning of section 1202.4, subdivision (a)(1). (*Tommy A., supra*, at p. 1590; *Hamilton, supra*, at pp. 942–943.)

A different result was reached by the majority in *People v. Jennings* (2005) 128 Cal.App.4th 42 [26 Cal.Rptr.3d 709] (hereafter *Jennings*). Similar to the case now before us, *Jennings* involved driving under the influence of alcohol causing great bodily injury, while the culprit was driving his mother's car. (*Id.* at pp. 46, 53–54.) The company that insured the car paid a civil settlement to the victim. The culprit did not procure the policy and did not directly pay the premiums. However, he was named as an insured in the policy (*id.* at pp. 48, 53), and the settlement "was made 'directly' on [his] behalf, as well as on his mother's behalf." (*Id.* at p. 54.) *Jennings* concluded there is no basis to "draw a distinction" between persons who procure and pay for an insurance policy and those who are simply covered by the policy. (*Ibid.*) "Whether the defendant procured the insurance in question, whether the defendant has a contractual right to have payments made on his behalf, and whether the insurer has a right to indemnity or subrogation against the defendant, each goes to the heart of the concept of being 'insured.' In contrast to these factors, 'the question who paid the premiums on the policy is irrelevant to determining who is an insured under the policy.' [Citation.]" (*Id.* at p. 56.) Accordingly, "rather than try to determine how the insurance was procured, a court must determine simply whether or not the insurer's payments to the victim were made on behalf of the defendant as a result of the defendant's status as an insured." (*Id.* at p. 57.)

We agree with the reasoning of *Jennings*.

The two insurance policies at issue in this case were issued for defendant's employer. A commercial vehicle policy insured the employer and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ." An "umbrella" policy insured the employer and "[a]ny person (other than Your partners, executive officers, directors, stockholders or employees) or organization with respect to any Auto owned by you, loaned to you or hired by you or on Your behalf and used with Your permission."

■ The People do not dispute that when he collided with DeClusin's car and injured the victim, defendant was acting within the course and scope of his employment and was driving an employer vehicle that was covered by the two insurance policies. Consequently, although his name is not listed as an insured in either policy, defendant was a member of the class of insureds covered under the policies. For this reason, the insurance company was contractually obligated to compensate the victim on behalf of defendant as well as on behalf of his employer, even though defendant did not procure the policy or make the premium payments. This is exactly what the insurance company did by paying $3 million to the victim in exchange for his release of both defendant and his employer from further liability arising out of the collision.

Thus, the settlement payment is deemed to be restitution to the victim made directly from defendant within the meaning of section 1202.4. (*Jennings, supra*, 128 Cal.App.4th at pp. 53–57; *Bernal, supra*, 101 Cal.App.4th at pp. 165–168.)

■ This is not, as the People claim, a fortuitous windfall that should not inure to defendant's benefit. Labor Code section 2802 requires an employer to insure or otherwise indemnify an employee "for all . . . losses incurred by the employee in direct consequence of the discharge of his or her duties." (Lab. Code, § 2802.) Thus, the statute requires an employer "to pay any judgment entered against the employee for conduct arising out of his employment." (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100 [93 Cal.Rptr.2d 425].) Nor was the policy, in the trial court's words, "procured not for the benefit of the Defendant [but] rather to protect Defendant's employer from vicarious liability for the acts of its employees." As the purpose of Labor Code section 2802 is "to protect employees from suffering expenses in direct consequence of doing their jobs" (*Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 59–60 [1 Cal.Rptr.2d 808]), procurement of the insurance policy to cover those losses was a benefit for defendant as much as it was for the employer.

One question remains. The victim restitution order in the criminal case was specifically limited to reimbursement for the victim's "medical costs," but the civil settlement amount was intended to resolve all of the civil claims of the victim and his wife, not just the victim's medical costs. Therefore, on remand, the trial court must determine what portion of the $3 million settlement must be allocated to reduce defendant's restitution obligation. (*Bernal, supra*, 101 Cal.App.4th at pp. 165–166; *Jennings, supra*, 128 Cal.App.4th at pp. 58–59.)

## DISPOSITION

The trial court's order denying defendant's motion to modify the victim restitution order is reversed, and the matter is remanded for further proceedings to determine what portion of the $3 million settlement must be offset against defendant's victim restitution obligation.

Blease, J., and Davis, J., concurred.

A petition for a rehearing was denied March 25, 2008.