[No. B209550. Second Dist., Div. Three. June 29, 2009.]

VIGILANT INSURANCE COMPANY, Plaintiff and Respondent, v. ROBERT C. CHIU et al., Defendants and Appellants.

## COUNSEL

Megan A. Richmond for Defendants and Appellants.

Anderson, McPharlin & Conners, David T. DiBiase and Joseph P. Tabrisky for Plaintiff and Respondent.

## OPINION

**CROSKEY, J.**—In this case, the appellant, Robert C. Chiu also known as Chih Yuan Chiu (Robert), seeks reversal of a judgment entered in favor of respondent, Vigilant Insurance Company (Vigilant). Robert claims that Vigilant cannot obtain a judgment in this action since he has already been ordered to pay restitution as part of his criminal sentence for grand theft and that the restitution order includes the same amounts Vigilant has recovered in the instant case. We disagree and hold that the restitution statute (Pen. Code, § 1202.4) does not preclude entry of a civil judgment for economic losses that may also be the subject of the criminal restitution order.[1]

### *FACTUAL AND PROCEDURAL BACKGROUND*[2]

On April 7, 2004, Robert was convicted of the crime of grand theft. Over a period of time, he had stolen $397,085.31 worth of computer accessories, including monitors, peripherals, keyboards and other parts, from his employer, ViewSonic.[3] As a part of his sentence, Robert was ordered to pay restitution to ViewSonic in the total sum of $615,000 pursuant to Penal Code, section 1202.4 (Section 1202.4), subdivision (f). This included the value of the stolen property, as well as lost profits and opportunity costs, and preorder interest.

Vigilant had issued a policy of crime insurance to ViewSonic covering the period March 1, 2003, to March 1, 2004 (crime insurance policy No. 3533-19-86/029 (the Policy)). It covered ViewSonic for the loss resulting from Robert's theft of its property. On September 4, 2005, pursuant to the terms of

---

[1] As we explain below, however, any amount paid by Robert on the restitution order would be credited on any civil judgment entered against the criminal defendant arising out of the same conduct as the criminal conviction.

[2] The facts we recite are undisputed and, for the most part, were the subject of a stipulation between the parties.

[3] Robert's employment was terminated on or about March 25, 2004, apparently following his arrest for the theft.

the Policy, Vigilant paid to ViewSonic the sum of $347,085.31 (after subtracting a $50,000 deductible). In consideration of such payment, ViewSonic executed a release and assignment of all of its rights against Robert in favor of Vigilant.[4]

Vigilant filed this action against Robert on March 30, 2006, alleging counts for fraud, conversion and embezzlement. It sought recovery for the loss it had actually paid to its insured, $347,085.31, plus the insured's deductible of $50,000. After a bench trial, the court awarded judgment in favor of Vigilant totaling $504,306.89 which consisted of $397,085.31 in actual damages, interest of $105,853.15 and costs in the amount of $1,368.43.

At trial, Robert sought to defeat Vigilant's action by arguing that Vigilant, by virtue of the assignment from ViewSonic, already had *what amounted to a judgment* against Robert in the sum of $615,000 based on the same facts.[5] While Section 1202.4, subdivision (i) does provide that, "[a] restitution order imposed pursuant to subdivision (f) shall be enforceable as if the order were a civil judgment," the trial court nonetheless rejected Robert's contention that entry of judgment in favor of Vigilant would amount to an unlawful duplicative judgment. It held that nothing in Section 1202.4 precluded a *separate* civil action by the victim (or assignee) despite the existence of a restitution order.

Robert filed this timely appeal arguing that the judgment was improper because (1) Vigilant, as the assignee of its insured, already had an enforceable judgment against Robert and was not entitled to a second duplicative judgment; (2) as a matter of law, there cannot be two civil judgments for the same injury; and (3) the trial court erred in excluding expert testimony as to the legislative purpose and intent behind Section 1202.4 and its provisions for restitution.

## DISCUSSION

■ The resolution of this case, in reality, depends on the answer to a single question. Does an order of restitution under Section 1202.4 in favor of

---

[4] The assignment provided that: "INSURED [ViewSonic Corporation] does hereby assign and transfer all of its rights against Robert Chiu and against any other persons, banks, corporations or other entities who may have participated in any manner or contributed to said loss sustained, to VIGILANT INSURANCE COMPANY and does hereby appoint VIGILANT INSURANCE COMPANY its attorneys-in-fact to sue, collect, receipt for, compromise and settle in the name of INSURED [ViewSonic Corporation] or VIGILANT INSURANCE COMPANY at the sole expense and discretion of VIGILANT INSURANCE COMPANY."

[5] At trial, the parties stipulated that the rights under the restitution order made against Robert in his criminal trial were included in ViewSonic's assignment to Vigilant.

a victim of a crime preclude the victim (or the victim's assignee) from pursuing a separate civil action based on the same facts from which the criminal conviction arose? We conclude that it does not.

The people of California voted to enact Proposition 8, the "Victim's Bill of Rights," on June 8, 1982. The proposition added article I, section 28, subdivision (b) to the California Constitution, which declared that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." Article I, section 28, subdivision (b) required the Legislature to enact these rights within one calendar year; Section 1202.4 was one of many statutes passed in response.

 The purpose of Section 1202.4 reflects the mandate of article I, section 28, subdivision (b) of the Constitution. Section 1202.4 starts: "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." All defendants who have been convicted of a crime must make restitution for the economic losses suffered by their victims as well as pay a fine payable to the Restitution Fund.[6] As set out in Section 1202.4, subdivision (f), full restitution for the victim's economic loss is required, unless the court finds "compelling and extraordinary reasons for not doing so."

While Section 1202.4 is partly based on the right of victim compensation set out in Proposition 8 and article I, section 28, subdivision (b) of the California Constitution, restitution orders also serve the state's interest "in rehabilitation and punishment." (*People v. Moser* (1996) 50 Cal.App.4th 130, 135 [57 Cal.Rptr.2d 647].) Accordingly, restitution also serves a rehabilitative purpose by " 'ensur[ing] "that amends [are] made to society for the breach of the law." ' " (*People v. Crow* (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80].) It acts as a " ' "deterrent to future criminality" ' " by forcing criminals to directly face the harm they have caused to their victims. (*Ibid.*; see *People v. Moser, supra*, at p. 134.) " '[T]he direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.' " (*People v. Moser, supra*, at p. 136.)

 "In ascertaining the Legislature's intent, we turn first to the language of the statute, giving the words their ordinary meaning." (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912], citing *People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278,

---

[6] The Restitution Fund is a state-run program that provides financial assistance to victims of violent crime. Restitution fines are a major source of income for the fund.

856 P.2d 1134].) We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended. (*People v. Broussard, supra,* at p. 1071; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)[7]

Section 1202.4, subdivision (f) provides in pertinent part: ". . . [I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court *shall* require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . ." (Italics added.)

Section 1202.4, subdivision (f)(2) provides in pertinent part: "Determination of the amount of restitution ordered pursuant to this subdivision *shall not be affected by the indemnification or subrogation rights of any third party. . . .*" (Italics added.)

Section 1202.4, subdivision (i)[8] provides: "A restitution order imposed pursuant to subdivision (f) shall be enforceable *as if* the order were a civil judgment." (Italics added.)

Section 1202.4, subdivision (j) provides in pertinent part: ". . . Restitution collected pursuant to this subdivision *shall be credited to any other judgments for the same losses obtained against the defendant arising out of the crime for which the defendant was convicted.*" (Italics added.)

■ Clearly, these provisions, read together, demonstrate legislative recognition of the distinct and separate right of a victim to pursue a civil remedy irrespective of the restitution order, subject only to the requirement that the civil judgment credit any amounts paid under the restitution order.

■ While a restitution order is enforceable "as if [it] were a civil judgment" (§ 1202.4, subd. (i)), it is *not* a civil judgment. A restitution order

---

[7] Robert unsuccessfully sought to present expert testimony from a former member of the Legislature as to the Legislature's intent in enacting section 1202.4. It is well settled that the opinion of an individual legislator as to his or her intent, motive or opinion in sponsoring a particular piece of legislation is inadmissible. (*Rich v. State Board of Optometry* (1965) 235 Cal.App.2d 591, 603 [45 Cal.Rptr. 512].)

[8] Subdivision (i) was added by Senate Bill No. 1685 (1995–1996 Reg. Sess.) as part of the 1996 amendments to Section 1202.4. The subdivision was added "to better enable crime victims who suffer economic loss to collect restitution from defendants who cause those losses." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1685 (1995–1996 Reg. Sess.) as amended Aug. 5, 1996, p. 6.) A victim can more easily collect the amount owed in a civil judgment, since the victim can arrange for a direct payment or hire a collections agency, rather than to turn to the courts to compel payment.

does not resolve civil liability. (*People v. Whisenand* (1995) 37 Cal.App.4th 1383, 1391 [44 Cal.Rptr.2d 501].) There is no requirement that a restitution order "reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].)

■ A restitution order reimburses only for economic losses (§ 1202.4, subd. (f)(3)), not noneconomic losses, which can be recoverable in a civil judgment. A restitution order designed to make a victim whole is not a substitute for civil damages, and we reject Robert's argument to the contrary.

Moreover, a civil judgment does not satisfy the state's interest in a restitution order. "Just as a restitution order pursuant to the criminal law is not a substitute for a civil action to recover damages [citation], a . . . civil settlement is not a substitute for restitution in a criminal proceeding." (*People v. Clifton* (1985) 172 Cal.App.3d 1165, 1168 [219 Cal.Rptr. 904].) Though both compensate a victim for the economic loss resulting from a criminal act, a restitution order is the consequence of a criminal conviction and therefore serves the state's interest in rehabilitating and deterring criminals. (*Id.* at p. 1168; see *People v. Moser, supra,* 50 Cal.App.4th at pp. 134–135.)

■ Since restitution orders and civil judgments are issued for different purposes, a victim suffering from economic losses as a result of a criminal act has a right to both. A victim's right to sue a defendant for tortious conduct amounting to a crime and the state's right to impose a restitution order on a criminally convicted defendant are independent of one another. A victim can therefore recover through both restitution and civil judgment. (*People v. Clifton, supra,* 172 Cal.App.3d at p. 1168.)

■ Even if the plain language of Section 1202.4 and the rules of restitution did not allow victims to recover through both a restitution order and a civil judgment, Vigilant's status as the victim's insurer allows Vigilant to pursue a civil action against Robert for reimbursement for ViewSonic's claim resulting from Robert's theft.[9] ■ A victim's insurance company can bring civil actions for reimbursement against the defendant or the victim.

---

[9] In *People v. Birkett,* our Supreme Court considered whether insurers had a right to restitution for reimbursing victims of crimes. (*People v. Birkett, supra,* 21 Cal.4th at p. 230.) The Supreme Court held that insurers did not have a right to restitution for reimbursing the victims' expenses, since the plain language of Penal Code former section 1203.04 (repealed in 1995 and incorporated into § 1202.4) indicated that the restitution was owed only to "actual" or "direct" victims of a crime. (21 Cal.4th at p. 233.) An insurer did not become a "direct" victim of the crime purely by compensating the victim. (*Id.* at p. 245.) However, the court did recognize an insurer's right to pursue "civil remedies, if any, to recover any such prior indemnification either from the victim or from the probationer." (*Id.* at p. 246.) "[T]his result is

(*People v. Bernal* (2002) 101 Cal.App.4th 155, 166 [123 Cal.Rptr.2d 622].) In fact, insurer reimbursement claims are not only acceptable, but encouraged, since "equitable principles would tend to place the loss on the wrongdoing defendant, preclude a windfall recovery by the victim, and reimburse the third party." (*Id.* at p. 167.)

 Robert's argument that a judgment in this case would permit an improper duplicate recovery is without merit, since any restitution "shall be credited to any other judgments for the same losses obtained against the defendant arising out of the crime for which the defendant was convicted." (§ 1202.4, subd. (j).) Similarly, any payments made on the civil judgment must be credited against the restitution order, except to the extent that it includes postjudgment interest, prejudgment interest accruing between the date of the restitution order and the judgment, and costs.[10] (See Bjorkman et al., 3 Law and Practice of Insurance Coverage Litigation, § 42:53 ["A restitution order may not preclude a civil action for the same damages although a double recovery would not be permitted."].) In order to avoid unlawful duplicative recovery, a court can offset payments made on a civil judgment against the restitution order. (See *People v. Short* (2008) 160 Cal.App.4th 899, 903 [73 Cal.Rptr.3d 154]; *People v. Jennings* (2005) 128 Cal.App.4th 42, 58 [26 Cal.Rptr.3d 709].) Robert will only be required to reimburse Vigilant once for the total amount of his theft.

---

neither absurd nor contrary to Proposition 8 . . . the Legislature could rationally conclude . . . that the rights of reimbursing third parties, aside from the state's own Restitution Fund, should be resolved in other contexts. Article I, section 28(b) does not suggest otherwise." (*Ibid.*)

Similarly, in *People v. Hove*, a court ordered a defendant to make full restitution to a victim of a drunk driving accident, though Medicaid and Medi-Cal had covered the victim's economic losses. (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1269 [91 Cal.Rptr.2d 128].) The court relied on the plain language of Section 1202.4, subdivision (f)(2), which provides: "Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party." However, the *Hove* court followed the *Birkett* line of reasoning and recognized the insurers' right to pursue civil remedies for reimbursement of payments made to the victim. (*Hove*, at pp. 1272–1273; see *People v. Birkett, supra*, 21 Cal.4th at p. 247.) Like any private insurer, Medi-Cal may "proceed against defendant directly under the third party liability statutes. (Welf. & Inst. Code, § 14124.70 et seq.)" (*Hove, supra*, 76 Cal.App.4th at p. 1272, fn. 5.)

[10] As the amount set by the restitution order does not accrue interest, amounts paid on the judgment attributable to postjudgment interest would *not* be credited against the amount due under the restitution order. Similarly, the prejudgment interest awarded for the period after the restitution order, and the $1,368.43 awarded for costs in this case, could *not* have been included in the restitution award, and amounts paid toward those obligations therefore cannot be credited against the restitution order.

### DISPOSITION

The judgment is affirmed. Vigilant shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

On July 17, 2009, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied September 9, 2009, S175410.