Filed 4/25/13  P. v. Shim CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>SAM HYUNG GOO SHIM et al.,<br><br>    Defendants and Respondents. | A134563<br><br>(San Francisco County<br>Super. Ct. Nos. 212129-01, 212129-02<br>& 212129-03) |

This case involves crimes by an employer relating to an employee's death while on the job, and the extent to which benefits paid under a workers' compensation policy can be used to offset direct victim restitution owed under Penal Code sections 1202.4 and 1203.1.[1]  The trial court credited the defendant-employer with death benefits paid by his workers' compensation carrier to the victim's family, following the general rule that a defendant is entitled to an offset for any amounts paid to the victim by the defendant's own insurance company.  (*People v. Bernal* (2002) 101 Cal.App.4th 155, 167-168 (*Bernal*).)  The People appeal, arguing that the employer was not entitled to an offset because he had fraudulently failed to report the victim's wages to the workers' compensation carrier, meaning that the victim's employment was not reflected in the insurance premiums.  In light of the defendant-employer's restitution to the workers'

_____

[1] Further statutory references are to the Penal Code except where otherwise indicated.

compensation carrier for that fraud (the subject of a separate criminal count in this proceeding), and in light of trial court's broad discretion to set an appropriate amount of restitution, we affirm.

BACKGROUND

Antonio Martinez, an undocumented worker from Mexico, was employed by defendant California C&R, Inc. (C&R), a roofing company owned by defendant Sam Hyung Goo Shim. C&R did not report Martinez's wages to its workers' compensation insurance carrier, State Compensation Insurance Fund (SCIF), and did not pay state unemployment insurance taxes on behalf of Martinez.

Martinez died on the job after a fall from the roof of a four-story apartment building in San Francisco. Defendant Jwa Young Kim, who was also employed by C&R, was the foreman at the worksite and Martinez's supervisor. Martinez was not wearing a harness and there were no railings or barriers on the roof to prevent a fall to the sidewalk. Cal/OSHA regulations (Cal. Admin. Code, Tit. 8, § 1730) require safeguards for roofing work higher than 20 feet off the ground.

The grand jury issued an indictment charging C&R, Shim and Kim with felony counts of involuntary manslaughter and willfully violating an occupational health and safety standard resulting in death. (§ 192, subd. (b); Lab. Code, § 6425.) C&R and Shim were also charged with several counts of workers' compensation premium fraud and failure to withhold or pay unemployment insurance tax. (Ins. Code, § 11880, subd. (a); Unemp. Ins. Code, § 2117.5.)

Shim pled guilty to one felony count each of involuntary manslaughter, violating an occupational health and safety standard resulting in death, workers' compensation premium fraud, and failure to pay or withhold unemployment insurance tax, in exchange for an indicated disposition of five years probation and one year in county jail. (§ 192, subd. (b); Lab. Code, § 6425, subd. (a); Ins. Code, § 11880; Unemp. Ins. Code, § 2117.5.) C&R pled guilty to a single felony count of violating an occupational health and safety standard, with an indicated disposition of five years probation. (Lab. Code, § 6425.) The district attorney amended the indictment to charge Kim with a misdemeanor count of

2

violating an occupational health and safety standard causing death, and Kim pled no contest to this single misdemeanor count, with an indicated disposition of 364 days in county jail and three years probation. (Lab. Code, § 6425, subd. (a).)[2] Shim and C&R entered waivers of their rights under *People v. Harvey* (1979) 25 Cal.3d 754, thus allowing the court to consider the dismissed counts when imposing sentence and calculating the amount of victim restitution. (See *People v. Hume* (2011) 196 Cal.App.4th 990, 994-995 (*Hume*).) The court imposed the probationary dispositions contemplated by the plea agreements and the remaining charges were dismissed.

As a condition of their pleas, Shim and C&R agreed to pay restitution to the Employment Development Fund in the amount of $3,152.34 and to SCIF in the amount of $108,205.61. All defendants reserved their right to challenge the amount of restitution to be awarded to Martinez's heirs, who had already received a settlement of $320,000 in death benefits from SCIF under C&R's workers' compensation policy. At a separate hearing to determine the restitution to be paid to Martinez's heirs, the primary issue presented was whether the defendants were entitled to offset the $320,00 payment made by SCIF to the family against the obligation to pay restitution. The People took the position that no offset should be allowed, because Shim and C&R had failed to report Martinez's employment to SCIF and had committed fraud with respect to the workers' compensation insurance premiums. Defendants pointed out that SCIF had been made whole by the $108,000 that Shim and C&R agreed to pay to SCIF as restitution, an amount that represented the delinquent premium payments owed to SCIF to cover Martinez's employment.

The parties stipulated to the following facts for purposes of resolving the restitution issue: (1) C&R and Shim had workers' compensation insurance through SCIF; (2) Martinez was employed by C&R and Shim; (3) after Martinez died on the job, SCIF paid his family members a death benefit of $320,000; (4) Shim had failed to report

---

[2] A violation of Labor Code section 6425, subdivision (a) is a "wobbler" offense, alternatively punishable as a felony or a misdemeanor. (See § 17, subd. (b); *People v. Myers* (2009) 170 Cal.App.4th 512, 516.)

any of Martinez's wages to SCIF in violation of Insurance Code section 11880, subdivision (a); (5) C&R and Shim had agreed to pay SCIF $108,205.61 in restitution, an amount reflecting the unpaid premiums associated with Martinez's employment; and (6) SCIF's workers' compensation payment to Martinez's heirs was greater than any restitution that would be owed by defendants to the family.[3]  The parties additionally agreed that Shim and C&R had paid workers' compensation premiums to SCIF for at least two employees other than Martinez.

The trial court concluded that defendants were entitled to offset SCIF's settlement with the Martinez family:  "I must say, as the attorneys have pointed out to me, it's a case of first impression.  And I'm going to find that there's an offset.  I'm doing that because I think its clear that in criminal matters such as this, the restitution, the idea is to make the victim whole.  We definitely want to see that happen.  [¶] Also, that if a defendant's insurance carrier, that they have paid insurance for, does make the victim whole, then the defendant is entitled to that offset.  [¶] The question here, as I see it, is it's clear that the defendants' insurance carrier did make the victims whole.  That's by stipulation, saying the 320,000 is more than what would be required.  And the real question is should the defendant then have to pay monies to the victim, doubling whatever the victim got, albeit he's already satisfied himself with his insurance carrier by paying, I think it was 108,000. [¶] So the defendant has paid 108,000 in settling whatever claims he had with his insurance carrier that the insurance carrier, workers' comp folks are satisfied that he's up to date. . . . [¶] . . . .[¶]  . . . . So the workers' comp folks would be satisfied with that 108,000, it seems to me, is the way I read that, and they have then said that they paid the 320[,000]. . . . [¶] . . . So it seems to me that the main thing that I am concerned with is

---

[3]  Case law has held that when an injured party is an undocumented worker, civil damages for lost future earnings should be based on the wages the injured party could expect to receive in his or her country of lawful citizenship, not necessarily the wages that would have been earned in the United States.  (See *Rodriguez v. Kline* (1986) 186 Cal.App.3d 1145, 1149.)   The People's brief regarding the restitution issue indicated that the appropriate amount of restitution would be $38,373.35 if Mexican wages were used to calculate lost support/future earnings, and $411,596.35 if United States wages were used.

4

that the victim becomes whole. In this case, if that has happened, and if there's any fraud here, it was between the defendants and the workers' comp, SCIF, and SCIF and [the defendants] have already settled that claim so I . . . therefore I am going to find it as an offset."

The People appeal. (§ 1238, subd. (a)(5); *People v. Hamilton* (2003) 114 Cal.App.4th 932, 938 [post-sentence order regarding restitution affects substantial rights of the People and is appealable] (*Hamilton*).)

DISCUSSION

The People contend the trial court should not have granted defendants an offset for benefits paid under the SCIF workers' compensation policy. They reason that because Shim and C&R failed to report Martinez's employment to SCIF, they should not receive the benefit of that policy. The People further argue that defendant Kim has no basis for claiming an offset because he did not, in any event, secure the insurance policy under which Martinez's family members were paid. We reject these claims.

Two statutes govern a victim's right to direct restitution when probation has been granted. The first, section 1202.4, gives all direct victims of a crime a mandatory right to restitution "directly from" the defendant, in an amount sufficient to fully reimburse the victim for every determined economic loss suffered as a result of the crime. (§ 1202.4, subds. (a)(1), (f)(3) & (k)(1); *People v. Anderson* (2010) 50 Cal.4th 19, 27-29 (*Anderson*).) The second, section 1203.1, governs probation conditions in general and allows a court to impose restitution as a condition of probation. (§ 1203.1, subd. (b).) The scope of a trial court's discretion is broader when restitution is imposed as a condition of probation under section 1203.1, and restitution under that statute is not strictly tied to economic losses directly caused by the defendant's criminal conduct. (*Anderson*, at pp. 27, 29; *People v. Giordano* (2007) 42 Cal.4th 644, 663, fn. 7 (*Giordano*).)

Generally speaking, a defendant who is obligated to pay victim restitution is not entitled to offset amounts that the victim receives from a collateral source that is independent of the defendant, such as the victim's own insurance, Medicare, or a

5

professional fund designed to compensate parties injured by a member of that profession. (*Hamilton*, *supra*, 114 Cal.App.4th at pp. 940-941; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272 (*Hove*); *Hume*, *supra*, 196 Cal.App.4that p. 996.) This is because the fortuity that the victim has purchased insurance, or qualifies for some other kind of benefit or compensation not attributable to the defendant, "should not shield [the] defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime." (*Hove*, *supra*, 76 Cal.App.4th at p. 1272.) Also, such payments are subject to claims for reimbursement and subrogation against the defendant. (*Bernal, supra*, 101 Cal.App.4th at pp. 166-167.) "As a result of these reimbursement claims, equitable principles would tend to place the loss on the wrongdoing defendant, preclude a windfall recovery by the victim, and reimburse the third party." (*Id*. at p. 167.)

By contrast, a defendant generally *is* entitled to an offset for amounts paid to the victim by the defendant's own insurer. (*Bernal*, *supra*, 101 Cal.App.4th at pp. 165-168; see also *Hume*, *supra*, 196 Cal.App.4th at p. 996; *People v. Short* (2008) 160 Cal.App.4th 899, 901, 905 (*Short*).) As explained in *Bernal*, when a defendant's insurance company makes payments to a victim pursuant to an insurance contract, it generally has no recourse against the insured defendant. (*Bernal*, at p. 167.) "If [the defendant] paid his entire restitution obligation with no credit for the . . . insurance payment, the victim would receive a windfall to the extent that such payments duplicated items already reimbursed by [defendant's] carrier." (*Ibid*.)

Additionally, section 1202.4, subdivision (a)(1) mandates that the victim receive payments "directly from" the defendant. (*Bernal*, *supra*, 101 Cal.App.4th at p. 167.) Unlike a payment from an unrelated source, a payment to the victim under the defendant's insurance policy is a payment "directly from" the defendant: "The defendant's own insurance company is different than other sources of victim reimbursement, in that (1) the defendant procured the insurance, and unlike the other third-party sources, its payments to the victim are not fortuitous but precisely what the defendant bargained for; (2) the defendant paid premiums to maintain the policy in force; (3) the defendant has a contractual right to have the payments made by his insurance

company to the victim, on his or her behalf; and (4) the defendant's insurance company has no right of indemnity or subrogation against the defendant." (*Id.* at p. 168; see also *Hume, supra*, 196 Cal.App.4th at pp. 996-997.)[4]

In the case before us, Shim and C&R maintained workers' compensation insurance through SCIF. SCIF paid Martinez's family members $320,000 under this policy as compensation for Martinez's death. The $320,000 came "directly from" Shim and C&R within the meaning of section 1202.4. As the parties agree, SCIF would have no basis for recovering any portion of the $320,000 from Martinez's family if the family were to recover restitution from the defendants. The offset avoided double payment to Martinez's family, which had been fully compensated by the insurance payment. (*Bernal, supra*, 101 Cal.App.4th at p. 167.)

The People argue that Shim and C&R should not be credited with SCIF's payment of $320,000 to Martinez's family given that those defendants had failed to report Martinez's wages to SCIF and had paid a lower insurance premium as a result. They note that restitution in this case was authorized by section 1203.1, which, in addition to compensating the victim, "addresses the broader probationary goal of rehabilitating the defendant." (*Anderson, supra*, 50 Cal.4th at p. 27.) As the People observe, restitution is " ' "an effective rehabilitation penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused." ' " (*Ibid.*, citing *People v. Carbajal* (1995) 10 Cal.4th 1114, 1124.) The People argue that the offset in this case did not promote the goal of fostering defendants' rehabilitation, because the defendant did not have to pay anything out of pocket for Martinez's death—including the insurance premiums to SCIF.

We review a restitution order made as a condition of probation for abuse of discretion, a standard that requires us to affirm unless the order is "arbitrary or capricious or otherwise exceeds the bounds of reason." (*Anderson, supra*, 50 Cal.4th at p. 32; see *Giordano, supra*, 42 Cal.4th at p. 663.) So long as the trial court employed a rational

---

[4] The People acknowledge that SCIF has no right of subrogation against the defendants.

7

method of fixing the amount that was calculated to make the victim whole, the order must be affirmed. (*People v. Fortune* (2005) 129 Cal.App.4th 790, 794; *People v. Baker* (2005) 126 Cal.App.4th 463, 470.) An abuse of discretion is not established simply by showing that a different court considering the same facts might have utilized a different method of calculating restitution and reached a different result. (See *People v. Akins* (2005) 128 Cal.App.4th 1376, 1386-1387.)

We find no abuse of discretion in this case. The trial court considered the People's arguments, but concluded that the defendants' fraudulent conduct toward *SCIF* did not render an offset inappropriate when calculating the restitution to be paid to the family of *Martinez*. Significantly, Shim pled guilty to the separate crime of insurance fraud against SCIF, and Shim and C&R had agreed to pay SCIF over $108,000 to compensate it for the unpaid premiums associated with Martinez's employment. In light of this restitution to SCIF, the court did not act arbitrarily and capriciously when it allowed Shim and C&R to offset the payment made by SCIF on their behalf. Martinez's family had been fully compensated and, presumably, so had SCIF. "A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall." (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172; see also *People v. Garcia* (2011) 194 Cal.App.4th 612; *Fortune*, *supra*, 129 Cal.App.4th at p. 795.)

We turn next to the People's argument that defendant Kim was not entitled to an offset for SCIF's payment to Martinez's family because he did not procure the workers' compensation policy. We reject the argument for the reasons stated in *Short*, *supra*, 160 Cal.App.4th 899, in which the defendant pled guilty to driving under the influence and causing great bodily injury, a crime that occurred while he was operating his employer's vehicle. The defendant in *Short* was ordered to pay over $450,000 in victim restitution; later, his employer's insurance company paid the victim the policy limits of two insurance policies totaling $3 million. (*Id*. at pp. 901-902.) The appellate court concluded the employee-defendant was entitled to an offset, even though he had not paid for the insurance policy: "This is not, as the People claim, a fortuitous windfall that should not inure to defendant's benefit. Labor Code section 2802 requires an employer

8

to insure or otherwise indemnify an employee 'for all . . . losses incurred by the employee in direct consequence of the discharge of his or her duties.' (Lab.Code, § 2802.) Thus, the statute requires an employer 'to pay any judgment entered against the employee for conduct arising out of his employment.' (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1100.) Nor was the policy, in the trial court's words, 'procured not for the benefit of the Defendant [but] rather to protect Defendant's employer from vicarious liability for the acts of its employees.' As the purpose of Labor Code section 2802 is 'to protect employees from suffering expenses in direct consequence of doing their jobs' (*Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 59–60[]), procurement of the insurance policy to cover those losses was a benefit for defendant as much as it was for the employer." (*Short*, *supra*, 160 Cal.App.4th at p. 905; see also *People v. Jennings* (2005) 128 Cal.App.4th 42 [defendant who pled guilty to causing injury while driving under the influence was entitled to offset money paid by his mother's insurance policy, on which he was a named insured, even though mother had paid for the policy].)

Effective January 1, 2013, prompted by the trial court's ruling in this case, the Legislature amended section 1202.4 to include the following provision as subdivision (f)(12): "In cases where an employer is convicted of a crime against an employee, a payment to the employee or the employee's dependent that is made by the employer's workers' compensation insurance carrier shall not be used to offset the amount of the restitution order unless the court finds that the defendant substantially met the obligation to pay premiums for that insurance coverage." (Stats. 2012, ch. 868, § 3 (Sen. Bill No. 1177), ch. 873, § 1.5 (Sen. Bill No. 1479); see Rep. on Hearing on Sen. Bill No. 1177 as introduced and amended Feb. 22, 2012, Apr. 11, 2012.)

The parties agree that this amendment is not retroactive and does not directly apply to this case. (See § 3; *People v. Zito* (1992) 8 Cal.App.4th 736, 740-741; *Hamilton, supra*, 114 Cal.App.4th at p. 939, fn. 5.) Indirectly, the amendment provides support for upholding the trial court's restitution order. " 'An amendment to a statute making a material change in its wording bespeaks a legislative intent to change the meaning of the prior statute.' " (See *People v. Mohammed* (2008) 162 Cal.App.4th 920, 932.) The

9

Legislature's explicit curtailment of a trial court's discretion to order an offset under circumstances like those in this case suggests that such an offset was not prohibited under previous law.

DISPOSITION

The judgment is affirmed.

_____

NEEDHAM, J.

We concur.

_____

JONES, P. J.

_____

SIMONS, J.