Filed 6/28/16  P. v. Arredondo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041558 & H042003 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1117824) |
| v. | |
| DAVID DOMINGO ARREDONDO, | |
| Defendant and Appellant. | |

Defendant David Domingo Arredondo pleaded no contest to driving under the influence of alcohol (Veh. Code, § 23153, subd. (a)) and being involved in a hit and run accident (Veh. Code, 20001, subds. (a) & (b)(1)).  The trial court ordered defendant to pay victim restitution for property damages resulting from the accident.  On appeal, defendant challenges the restitution order, arguing that the trial court erred by failing to offset restitution by the settlement paid by his aunt's insurance carrier.  We conclude that the trial court did not abuse its discretion in denying the offset, and we affirm the judgment.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

On October 13, 2011, defendant was driving under the influence of alcohol when he rear-ended the victim's car.  Defendant drove away from the scene of the accident. The victim sustained injuries and her vehicle was damaged.  Later, defendant's aunt's

insurance company paid a $15,000 settlement to the victim, releasing defendant and his aunt from all claims.

Defendant pleaded no contest to one count of driving under the influence of alcohol and causing injury (Veh. Code, § 23153, subd. (a)) and to one count of committing a hit and run that resulted in injury or death (Veh. Code, § 20001, subds. (a) & (b)(1)). He also admitted an allegation that he proximately caused injury to another person (Veh. Code, § 23558). The trial court sentenced defendant to three years of formal probation and ordered him to serve eight months in jail.

On September 26, 2014, the trial court held a formal restitution hearing. The prosecution submitted the probation report, which included a recommendation that restitution be set at $9,108.57. The report also included supporting documentation for that amount. Defendant submitted a copy of his aunt's insurance policy and a copy of the settlement check, which showed that the insurer paid the victim $15,000. The insurance policy provided that the insurer would pay for damages caused by those specified as "[p]ersons insured." The policy defined "[p]ersons insured" to include "any other person using an owned automobile, provided it is used with the permission of the named insured, expressed or implied, and within the scope of such permission . . . ." The parties also stipulated that if called to trial, defendant's aunt would testify that defendant had permission to drive her car. Based on the evidence and the stipulation, defendant argued that he was entitled to an offset because the policy expressly insured permissive drivers.

After taking the matter under submission, the trial court issued an order denying the offset. The court found that there was no evidence that (1) defendant procured the insurance; (2) defendant paid premiums; (3) defendant had a contractual right to have payments made to the victim on his behalf; and (4) the insurer had no right of indemnity or subrogation against defendant. At a subsequent hearing in January 2015, the trial court formally ordered defendant to pay $9,108.57 in victim restitution.

2

## II.    DISCUSSION

### A. *RIGHT TO RESTITUTION*

Victims of crime have a state constitutional right to restitution for losses resulting from criminal acts against them. (Cal. Const., art. I, § 28, subd. (b)(13)(A).) The Legislature has implemented this right through Penal Code section 1202.4, which provides in relevant part: "(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime. [¶] . . . [¶] (3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay . . . the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment. [¶] . . . [¶] (f) . . . [I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . [¶] (1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible."

## B. STANDARD OF REVIEW

We review a restitution order for abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) A court abuses its discretion only if its decision is arbitrary or capricious or based on a demonstrable error of law. (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1382.) We affirm the order if there is a factual and rational basis for the restitution award. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) We do not reweigh or reinterpret the evidence presented at a restitution hearing; instead, we determine whether there was sufficient evidence to support the inferences drawn by the trier of fact. (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

## C. ANALYSIS

Generally, there is no offset for an amount that a victim receives as compensation for losses from a collateral source that is *independent* of the defendant, such as Medicare or the victim's own insurance. This is so even if the restitution order results in a double recovery. (*People v. Birkett* (1999) 21 Cal.4th 226, 246; *People v. Hamilton* (2003) 114 Cal.App.4th 932, 940-941 (*Hamilton*); *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272.) "[A]lthough a restitution order is not intended to give the victim a windfall [citation], a third party source which has reimbursed a direct victim for his or her loss may pursue its civil remedies against the *victim or perpetrator.* '[T]he possibility that the victim may receive a windfall because the third party fails to exercise its remedies does not diminish the victim's right to receive restitution of the full amount of economic loss caused by the perpetrator's offense.' [Citation.]" (*People v. Hume* (2011) 196 Cal.App.4th 990, 996.)

On the other hand, a defendant is entitled to an offset for amounts paid to the victim by the defendant's own insurer. (*People v. Bernal* (2002) 101 Cal.App.4th 155, 167-168 (*Bernal*).) As explained in *Bernal,* when a defendant's insurance company makes payments to a victim pursuant to an insurance contract, it generally has no recourse against the insured defendant. (*Id.* at p. 167.) Unlike a payment from an

4

unrelated source, a payment to the victim under the defendant's insurance policy is deemed a payment "directly from" the defendant within the meaning of Penal Code section 1202.4, subdivision (a)(1). (*Id.* at p. 168.) Thus, payments from the defendant's own insurer are different from other sources of victim reimbursement because (1) the defendant procured the insurance, and the payments are not fortuitous but rather are precisely what he or she has bargained for; (2) the defendant paid premiums to keep the policy; (3) the defendant has a contractual right to have the insurance company make payments to the victim on his or her behalf; and (4) the insurance company has no indemnity or subrogation rights against the defendant. (*Ibid.*)

The right to an offset is less clear when the victim receives payment from an insurer under a policy that the defendant did not personally procure but which was not completely collateral to and independent of the defendant.

For example, in *People v. Jennings* (2005) 128 Cal.App.4th 42 (*Jennings*), the defendant was driving under the influence when he got into an accident that injured his passenger. (*Id.* at p. 46.) The defendant's mother's insurance company paid a settlement to the passenger, in exchange for a release of both defendant and his mother from all claims arising from the accident. (*Id.* at p. 47.) The trial court ordered full restitution and denied an offset after finding that the defendant's mother, not the defendant, was the insured. (*Id.* at p. 48.) In a motion to modify the restitution order, the defendant presented evidence that: he was a named insured and a named driver on the policy; his name was on the declarations page; and he had helped pay the insurance premiums. Moreover, the insurer indicated that it had no subrogation rights based on the claims it had paid on the defendant's behalf. (*Ibid.*) Nonetheless, the trial court again denied an offset. (*Id.* at p. 53.)

The appellate court reversed the denial of the offset. (*Jennings*, *supra*, 128 Cal.App.4th at pp. 53, 56-57.) The court explained that the critical *Bernal* inquiry is whether the defendant "is an insured on whose behalf the settlement payments were

made," and not the manner in which the insurance was procured. (*Id*. at p. 53.) The appellate court noted that the insurance policy expressly named the defendant as an insured, that no one challenged the authenticity of that document, and that after the accident, the insurer excluded the defendant from the policy. (*Ibid*.) The court also noted that the defendant and his mother had presumably paid a higher premium for the policy to cover both of them. (*Ibid.*) Furthermore, the insurer paid the settlement expressly on the defendant's behalf, and in return, the injured passenger released her claims against the defendant. In light of the evidence, the appellate court concluded that defendant was an insured under his mother's policy, and was thus entitled to an offset. (*Id.* at pp. 53-54.)

The appellate court in *People v. Short* (2008) 160 Cal.App.4th 899 (*Short*), also held that a defendant was entitled to an offset. The defendant in *Short* was driving his employer's vehicle and was in the course of his employment when he got into an accident with the victim. (*Id.* at p. 901.) The employer's insurance company paid the settlement to the victim on behalf of the employer and the defendant. (*Id.* at p. 902.) The appellate court held that the defendant was entitled to an offset, despite the fact that: defendant did not procure the insurance policy; he did not pay any premiums; and his name was not on the policy. (*Id.* at p. 905.) The court reasoned that though the defendant was not a named insured, he was a member of the "class of insureds" covered by the policy. (*Ibid*.) The court explained that this was not a "fortuitous windfall" for the defendant's benefit. Rather, employers were statutorily required "to insure or otherwise indemnify an employee 'for all . . . losses incurred by the employee in direct consequence of the discharge of his or her duties [.]' (Lab. Code, § 2802.) . . . [Citation.] . . . As the purpose of Labor Code section 2802 is 'to protect employees from suffering expenses in direct consequence of doing their jobs' [citation], procurement of the insurance policy to cover those losses was a benefit for defendant as much as it was for the employer." (*Ibid.*)

6

In contrast to *Jennings* and *Short*, the appellate court in *Hamilton*, *supra*, 114 Cal.App.4th 932, held that the defendant was not entitled to an offset. In *Hamilton*, the defendant shot the victim, who was working for his mother. The mother's insurance company paid a settlement claim on her behalf, obtained a release of all claims against her, and obtained a dismissal of the civil suit against both the mother and the defendant. (*Id.* at p. 935.) The appellate court found that the defendant was not entitled to an offset because the insurer paid the settlement only on the mother's behalf, and not on the defendant's behalf. (*Id.* at p. 943.) Distinguishing *Bernal, supra,* 101 Cal.App.4th 155, the appellate court found that the defendant "did not procure or maintain the insurance, had no contractual right to require payments to be made on his behalf, and was potentially subject to an indemnity claim by the insurer." (*Hamilton, supra*, at p.942*,* fn. omitted.) The court found that the payments were made by a source "completely distinct and independent from Hamilton—namely, his mother's insurer." (*Ibid.*) Thus, the settlement payment benefitting defendant was due to two fortuitous events: the mother procuring insurance coverage and the policy covering the defendant's acts. (*Ibid.*)

In the instant case, defendant was not the owner of the vehicle involved in the accident; he did not purchase the insurance that paid the settlement; he did not pay any of the insurance premiums; and he was not explicitly named as an insured or a driver anywhere in the policy. Notably, there was also no evidence showing that the insurer was barred from pursuing an indemnity claim against defendant. Furthermore, although the aunt's insurer paid a settlement to the victim for a release of all claims against defendant and his aunt, this fact alone does not establish that as a matter of law the settlement was made on his behalf. (See *In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1590-1591 [finding no restitution offset even though the victim signed an agreement expressly releasing the minor].)

Relying on *Short*, *supra*, 160 Cal.App.4th at page 905, defendant argues that he was entitled to an offset because he belonged to a class of permissive users, who were

7

insured under his aunt's policy. Defendant construes *Short* too broadly. Although the aunt's policy states that it covers damages caused by permissive users, this is not a situation like *Short*, *supra*, 160 Cal.App.4th at page 905, where the defendant belonged to a specifically bargained-for "class of insureds." Unlike *Short,* there is no employer-employee or principal-agent relationship here that would implicate an employer's statutory duty to indemnify an employee for losses incurred in the course of his or her employment. (Lab. Code, § 2802, subd. (a).) Because the principal-agent relationship does not exist between a named insured and a permissive user, the insurer does not have the same contractual obligation to a permissive user to settle a claim on his or her behalf.

On this record, the evidence did not establish a contractual relationship between defendant and his aunt's insurer such that any payment from the insurer could be deemed "directly from" the defendant. (*Bernal, supra,*101 Cal.App.4th at p. 168.) Rather, this case is similar to *Hamilton* because the settlement payment here was a result of fortuitous circumstances (i.e., the aunt procured insurance that compensated the victim for damages resulting from defendant's act). (*Hamilton, supra*, 114 Cal.App.4th at p. 942.) Therefore, the settlement payment was from a source that was independent of defendant, and thus it cannot relieve him from his obligation to pay the full restitution. Accordingly, we conclude that the trial court did not abuse its discretion in denying defendant the offset.

### III.    DISPOSITION

The restitution order is affirmed.

_____

RUSHING, P.J.


WE CONCUR:




_____

MÁRQUEZ, J.




_____

GROVER, J.