Filed 1/31/25  Go v. McClaugherty CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JUANITO APAO GO, | D083772 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVPS2203302) |
| JAY McCLAUGHERTY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside, Christopher B. Harmon, Judge.  Reversed and remanded with directions.

Ellis Law Group and Mark E. Ellis for Plaintiff and Appellant.

Ropers Majeski, and Lawrence Borys, Pascale Gagnon, Anna Norvruzyan for Defendants and Respondents.

Plaintiff and appellant Juanito Apao Go appeals a judgment entered after the trial court sustained without leave to amend the demurrer of defendants and respondents, attorney Jay McClaugherty and McClaugherty and Associates, to Go's second amended complaint for legal malpractice and breach of contract.  According to his pleading, Go had been sued for wrongful death, settled that civil action on defendants' advice then faced criminal

charges. He alleged in part that defendants, who were assigned to him by his insurer, negligently failed to advise him of the likelihood that the civil settlement would not prevent him from exposure for criminal restitution or failed to draft the settlement agreement so as to minimize his restitution obligation. The trial court ruled Go had not cured his inability to allege causation and damages, reasoning that Go had not been damaged by anything defendants may have omitted from the civil release or from any more extensive settlement agreement. Go contends his pleading adequately alleges that defendants' malpractice caused him damages, and thus his second amended complaint should have survived the demurrer. He also contends he alleged defendants owed him a duty of care, and that Insurance Code section 533.5—barring insurance coverage or indemnity for the payment of restitution in any criminal proceeding—does not bar his causes of action.

For the reasons explained below, we conclude the court erred by sustaining defendants' demurrer to Go's second amended complaint. Accordingly, we reverse the judgment and remand with directions that the court enter a new order overruling defendants' demurrer.

FACTUAL AND PROCEDURAL BACKGROUND

We state the background facts from the well-pleaded material factual allegations of Go's operative second amended complaint, disregarding contentions, deductions and factual or legal conclusions. (*Quishenberry v. UnitedHealthcare, Inc.* (2023) 14 Cal.5th 1057, 1062; *John's Grill, Inc. v. The Hartford Financial Services Group, Inc.* (2024) 16 Cal.5th 1003, 1008; *290 Division* (*EAT*), *LLC v. City and County of San Francisco* (2022) 86 Cal.App.5th 439, 450.) We consider matters that may be judicially noticed. (*John's Grill*, at p. 1008.)

2

In January 2018, Go was involved in an accident with a pedestrian who eventually died. The victim's next of kin, Olga Silva, sued Go for motor vehicle negligence and wrongful death. Go's insurer assigned his file to defendants. In November 2018, the Riverside County District Attorney's office filed a criminal misdemeanor vehicular manslaughter complaint against Go.

In early 2019, defendants agreed to settle the civil case.[1] They recommended to Go that they put up the full policy limits—$1,250,000—to terminate any further liability exposure, and on their advice, in January 2019, Go signed a settlement agreement/release with Silva for his insurer to pay those policy limits. The release provides in part that under the settlement, Silva will dismiss her action with prejudice "with each party

---

[1] Defendants in their brief recite certain facts that are outside Go's pleadings. For example, they assert as to the settlement's timing: "After discovery, including Silva's deposition, Silva presented a policy limit demand to [Go's insurer] Allstate. Allstate considered the demand, made the decision to, and did agree to settle for the full policy limits, as was its right and obligation. . . . After the agreement to settle, but before the payment, the Riverside District Attorney charged . . . Go criminally with respect to the accident that had resulted in the death of Decedent." For these propositions, defendants cite to their reply memorandum of points and authorities in support of their demurrer to Go's complaint. As discussed below, on a demurrer we must accept Go's allegations as true. An exception is where an alleged fact is contradicted by matters that are properly judicially noticed. (*Jimenez v. Mrs. Gooch's Natural Food Markets, Inc.* (2023) 95 Cal.App.5th 645, 653.) Even if defendants' document was judicially noticeable as a court record, we do not accept the truth of assertions made in it. (*Guarantee Forklift, Inc. v. Capacity of Texas, Inc.* (2017) 11 Cal.App.5th 1066, 1075 [appellate court may take judicial notice of court records but generally does "not take judicial notice of the truth of the matter asserted in such documents, and may decline to take judicial notice of matters not relevant to dispositive issues on appeal"]; *Wolf v. CDS Devco* (2010) 185 Cal.App.4th 903, 915.) We disregard defendants' extraneous assertions, including those supported only by citation to points and authorities.

bearing their own costs and attorneys' fees."[2]  Defendants did not communicate with or advise Go about any likelihood that the civil settlement would not prevent him from facing further monetary exposure by way of criminal restitution to Silva; the release drafted by the defendants failed to address or attempt to prevent or minimize, a criminal restitution obligation by set off or otherwise.

Instead, defendants and the release language led Go to incorrectly believe that the settlement, with the exhaustion of his insurance policies, would fully release him from all future potential liability to Silva.  The defendants did not reach out and interact with Go's criminal attorney to determine how to best negotiate a full release of both civil and criminal liability.

In November 2020, the court in the criminal case ordered Go to pay Silva $491,362.70 in restitution, finding that to be the actual and reasonable attorney fees she had incurred in pursuit of her civil recovery pursuant to a contingency fee agreement.  If defendants had advised Go that exhaustion of his full insurance policy would still leave him exposed to future liability, he would not have consented to the settlement but instead would have required defendants to insist on a full release of all civil and criminal damages liability to Silva.

---

[2]     As indicated below, the trial court took judicial notice of the People's restitution memorandum in Go's criminal case, which attached a "release of all claims" (capitalization omitted) between Go and Silva reflecting the terms of their settlement.  In part, the release provides:  "It is further understood that this release is pursuant to a settlement agreement entered into between plaintiff . . . Silva and defendant . . . Go.  Additionally, pursuant to said settlement, plaintiff . . . will dismiss the above-referenced action, with prejudice, forthwith, with each party bearing their own costs and attorneys' fees."

4

After he and defendants entered into a tolling agreement, Go in June 2022 filed a complaint against them for legal malpractice and breach of their contract for legal services. Defendants successfully demurred to that complaint as well as Go's first amended complaint. The court granted Go leave to amend on the condition that he make an effort to mitigate his damages by having the restitution award amended or deemed satisfied by the settlement. In doing so, it cited authority—*People v. Bernal* (2002) 101 Cal.App.4th 155 (*Bernal*), *People v. Jennings* (2005) 128 Cal.App.4th 42 (*Jennings*), and *People v. Short* (2008) 160 Cal.App.4th 899 (*Short*)—for the proposition that an insurer's private settlement offsets a restitution award.

Go then filed a second amended complaint containing the same causes of action. He alleged defendants owed him a duty to advise of the foreseeable consequences of settling the underlying case, including the imposition of criminal restitution, and they failed to use due care in performing legal services to protect him by negotiating a settlement that released any potential criminal restitution, and/or by failing to advise Go about his exposure to continuing liability in the criminal case. He alleged defendants breached their professional duties by, among other things, failing to negotiate and/or draft the settlement agreement "to reduce, if not wholly eliminate by compromise settlement, any right of . . . Silva to criminal restitution" and they "did not recognize that the settlement signed by both [Go] and . . . Silva, as drafted, did not even attempt to address her settlement, or compromise, of the foreseeable possibility of her seeking further criminal restitution." Go alleged defendants put the interests of his insurer before his interests in the settlement of the underlying civil case, and failed to work or coordinate with his criminal attorney "so as to best protect him, and/or to use the insurance proceeds to cover both the civil settlement and the foreseeable criminal

5

restitution obligation." He alleged defendants' failure to properly advise him that the settlement would not cut off further liability in the criminal matter was below the standard of care, and had he known of that fact, he would have refused the settlement and insisted the policy proceeds be used to resolve the extant monetary claims. Go alleged defendants' failures to advise were substantial factors in causing a further monetary award against him in excess of $400,000. He alleged if defendants had acted competently, he would have resolved the criminal restitution by settlement or the restitution award would have been subject to setoff.

Defendants again demurred to Go's second amended complaint on grounds it failed to state facts sufficient to constitute a cause of action. They argued Go had not demonstrated how any alleged breach of duty on their part caused him damages in the criminal matter, in which they were not involved. More specifically, pointing out Go had not alleged he had made efforts to satisfy the court's condition in granting him leave to amend, defendants argued legal causation was lacking in view of *People v. Vasquez* (2010) 190 Cal.App.4th 1126 (*Vasquez*), which held in part that the settlement of a civil action and release of a defendant by a crime victim does not discharge the defendant's responsibility to satisfy a restitution order. They argued they were not retained to address the restitution order, and they could not control that order or any offset. Defendants further argued Insurance Code section 533.5—providing there is no insurance coverage for criminal restitution—barred Go's causes of action. They argued Go could not allege any duty or breach of duty on their part, and had not cured any of the deficiencies in his first amended complaint. Defendants asked the court to take judicial notice of various items, including the People's restitution memo in Go's criminal case and the court's restitution ruling.

Go opposed the demurrer, arguing *Vasquez* actually demonstrated causation, that is, that the restitution award was defendants' fault because he became liable for restitution of over $400,000 in attorney fees because his civil settlement failed to provide which portions of the fees were for non-economic versus economic damages, and/or subject to setoff. Among other arguments, Go maintained he pleaded significant new facts to support the causation element. He asked the court to judicially notice the misdemeanor complaint in his criminal case.

Granting the parties' requests for judicial notice, the trial court sustained the demurrer without leave to amend. Its order recounts its prior reasoning ruling on defendants' demurrer to the first amended complaint,[3] then states: "[Go] failed to cure the defect in the prior pleading on the causation and damages issue, and failed to allege any facts that any efforts were made to have the restitution order deemed satisfied in criminal court. In fact, [Go] ignores this issue altogether in the opposition, thereby conceding

---

[3] The court had reasoned: "Given the rule of *Bernal, Jennings* and *Short*, it does not appear that [Go] has been damaged by anything the defendants omitted either from the release or from any more extensive settlement agreement. It is settled that the release cannot prevent the imposition of a restitution order, so the wording of the release could not have caused damage to [Go]. Similarly, it is not clear how the text of any more extensive settlement agreement could have caused damage to [Go]. Regardless of what the settlement agreement says or fails to say, [Go] is entitled to an offset, so long as the insurance proceeds were paid to compensate the victim for the same losses for which restitution was ordered. There is no allegation that the losses for which restitution were ordered are different from the losses for which the settlement was paid. [¶] It appears to the court that the remedy for [Go] is a motion in the criminal court for an order deeming the restitution order to have been satisfied by the settlement. Since the defendants were not representing [Go] in the criminal action, any adverse consequences flowing from the failure to bring such a motion was not caused by any breach of duty by the defendants." (Some capitalization omitted.)

7

no such efforts were made. As pointed out by defendant[s], [Go's] additional allegations in the [second amended complaint] regarding duty and breach of duty are no different than theories [Go] has previously alleged, i.e., that defendants failed to properly advise him of foreseeable consequences of having to pay criminal restitution and failed to protect his interests by drafting the settlement release in a manner to shield or minimize liability for a criminal restitution award. . . . More importantly, these allegations do nothing to cure the defect regarding causation or damages."[4] (Some capitalization omitted.)

Go appealed from the ensuing judgment of dismissal.

DISCUSSION

I. *Standard of Review*

On an appeal from a judgment entered after the court sustains a demurrer, settled principles apply. "[W]e examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; see also *Martin v. Gladstone* (2023) 96 Cal.App.5th 681, 688-689.) " ' "We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law." ' " (*Rosenberg-*

---

4 The court had previously rejected defendants' arguments under Insurance Code section 533.5 in connection with their demurrer to Go's first amended complaint. It reasoned defendants' reliance on the statute was "misplaced" as "[i]t simply provides that '[n]o policy of insurance shall provide, or be construed to provide, any coverage or indemnity for the payment of any fine, penalty, or restitution in any criminal action or proceeding' " and "does not prohibit the use of insurance proceeds to offset criminal restitution."

8

*Wohl v. State Farm Fire & Casualty Co.* (2024) 16 Cal.5th 520, 523.)  "[T]he facts alleged in the [complaint] are deemed to be true, however, improbable they may be," unless they are inconsistent with attached documents or judicially noticed facts.  (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)  We liberally construe Go's pleading with a view to substantial justice between the parties.  (Code Civ. Proc., § 452; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.)

"Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment.  The plaintiff bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp.*, *supra*, 4 Cal.5th at p. 162.)

"We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling." (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549, quoting *Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

## II.  *Pleading Legal Malpractice*

"[T]he elements for a legal malpractice cause of action in California are: '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' " (*Akhlaghpour v. Orantes* (2022) 86 Cal.App.5th 232, 254-255, quoting *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.)  " 'In the legal malpractice context, the elements of causation and damage are particularly closely linked.' [Citation.]  The plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement

9

in the action in which the malpractice allegedly occurred." (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1582; see also *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.) This requirement safeguards against speculative and conjectural claims. (*Viner*, at p. 1241.) This method of presenting a legal malpractice lawsuit is commonly called a "trial within a trial" because the trier of fact is called upon to determine, using an objective standard, what should have been the results absent counsel's malpractice. (See *Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 934.)

Here, we are reviewing the adequacy of Go's complaint's allegations. The question before us is not whether Go can prove a legally cognizable claim, but only whether he has pleaded one. (*Briggs v. Lawrence* (1991) 230 Cal.App.3d 605, 610.) "[I]n an action brought by a client against his attorney for the latter's alleged negligence in failing to perform some act in behalf of the client, the complaint must not only specify the act, but must specifically allege and the plaintiff must prove that if the attorney had performed the act it would have resulted beneficially to the client." (*Feldesman v. McGovern* (1941) 44 Cal.App.2d 566, 568; see also *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 180 [to survive a demurrer on a claim for legal malpractice, plaintiff "need only allege that, but for [the attorney's] malpractice, she would have obtained a 'more favorable result' than the $600,000–plus judgment ultimately rendered against her"].)

But, " '[i]f the allegedly negligent conduct does not cause damage, it generates no cause of action in tort.' " (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 750.) " 'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable

10

harm as a consequence of [the] attorney's negligence, the client cannot establish a cause of action for malpractice.' " (*Ibid.*)

### III. *Criminal Restitution as Affected by Civil Settlements Arising from a Defendant's Criminal Conduct*

The California Constitution gives "all persons who suffer losses as a result of criminal activity . . . the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A); see *People v. Giordano* (2007) 42 Cal.4th 644, 652; *People v. Grundfor* (2019) 39 Cal.App.5th 22, 27.) "Restitution is mandatory: It must be ordered 'in every case, regardless of the sentence or disposition imposed.' " (*Grundfor*, at p. 27, citing Cal. Const., art. I, § 28, subd. (b)(13)(B).) Whenever a victim has suffered an economic loss as a result of the defendant's conduct, the trial court must order the defendant to pay "full restitution." (Pen. Code, § 1202.4, subd. (f); *Giordano*, at pp. 651-652; *Grundfor*, at p. 27.)[5] Because restitution serves not just to indemnify the crime victim but also to rehabilitate and deter a defendant from future criminality, a civil settlement between a victim and the criminal defendant's insurer does not relieve the defendant of his restitution obligation to the state. (*People v. Nonaka* (2022) 83 Cal.App.5th 998, 1002, citing *Bernal*,

---

[5]     Both the *Giordano* and *Grundfor* courts referred to earlier versions of Penal Code section 1202.4 before the Legislature in 2016 omitted the phrase "unless it finds compelling and extraordinary reasons for not doing so" from subdivision (f) of Penal Code section 1202.4. (*People v. Giordano, supra,* 42 Cal.4th at pp. 651-652; *People v. Grundfor, supra,* 39 Cal.App.5th at p. 27, fn. 4.) Go's accident occurred in January 2018, and the court ordered him to pay restitution in November 2020. The statute's versions operative in January 2018 and November 2020 are unchanged in all respects material to this case, both providing that "[t]he court shall order full restitution." (Former Pen. Code, § 1202.4, subd. (f); see Stats. 2017, ch. 101, § 1; Stats. 2018, ch. 142, § 1.)

*supra*, 101 Cal.App.4th at pp. 161-162; see *Grundfor*, at p. 28 [that a victim signs a release is irrelevant to propriety of the restitution order as the settlement and state's right to compel restitution "operate independently of" each other; "While the release may have relieved Grundfor from further *civil* liability, it did not relieve him from paying *criminal* restitution"]; *Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508, 517-518; *Vasquez, supra*, 190 Cal.App.4th at p. 1133.) "However, settlement payments made to a victim on the defendant's behalf must be used to offset the restitution award 'to the extent that those payments are for items of loss included in the restitution order.' " (*Nonaka*, at p.1002, citing *Bernal*, at p. 168 & *Vasquez, supra*, 190 Cal.App.4th at pp. 1134-1135; see also *Barickman*, at p. 518; *People v. Hume* (2011) 196 Cal.App.4th 990, 996.)

" 'Actual and reasonable' attorney fees," including fees a victim incurs to settle a civil lawsuit against the criminal defendant arising from the defendant's criminal conduct, "constitute an economic loss." (*People v. Grundfor, supra*, 39 Cal.App.5th at p. 28, citing Pen. Code, § 1202.4, subd. (f)(c)(3) & *People v. Fulton* (2003) 109 Cal.App.4th 876, 883 (*Fulton*); see also *People v. Giordano, supra*, 42 Cal.4th at p. 654; *People v. Nonaka, supra*, 83 Cal.App.5th at p. 1002.) Such attorney fees are recoverable as restitution unless they are offset in a civil settlement. (*Grundfor*, at p. 28; see *Bernal, supra*, 101 Cal.App.4th at pp. 165-168.) There is no such offset where a civil settlement agreement with a defendant stemming from his or her criminal activity requires each side to bear their own attorney fees, and thus the criminal court must order the defendant to pay full restitution for the fees. (*Grundfor*, at p. 28; see also *id.* at p. 29 ["Here, the [settlement] terms were that each side would bear its own attorney fees. Because the terms unambiguously show that the parties did not intend to include all of [the

12

victim's] losses—including her attorney fees—in the settlement, they could not have intended to resolve all restitution issues in it"].)

In 2003, this court acknowledged in *Fulton* that while a victim may recover actual and reasonable attorney fees incurred as a result of a defendant's criminal conduct as restitution, they are limited to those fees incurred to collect economic damages, that is, restitution "otherwise permitted under the statute." (*Fulton*, *supra*, 109 Cal.App.4th at pp. 884-885; see also *People v. Grundfor*, *supra*, 39 Cal.App.5th at p. 30 ["Attorney fees incurred to recover noneconomic losses cannot be ordered as restitution"]; *People v. Millard* (2009) 175 Cal.App.4th 7, 25-26 [observing the Penal Code provides for full restitution of a victim's economic losses, but does not authorize direct restitution for noneconomic losses].) We held in *Fulton*, however, that given the legislative intent and strong public policy requiring victims to be fully reimbursed for economic losses, "[i]t would be improper to reduce the attorney fees incurred to obtain economic damages merely because those same attorney fees also led to the recovery of nonrecoverable damages (e.g., pain and suffering damages)." (*Fulton*, *supra*, 109 Cal.App.4th at p. 885.) Thus, "when fees cannot be reasonably divided between the pursuit of economic losses as opposed to noneconomic losses, the victim is entitled to be fully reimbursed for all actual and reasonable attorney fees." (*Ibid.*; see also *Grundfor*, at p. 30.) We elaborated on the defendant's burden in the apportionment process: "Once the record contains evidence showing the victim suffered economic losses and incurred reasonable attorney fees to recover those losses, this showing establishes the amount of restitution the victim is entitled to receive, unless challenged by the defendant. In that event, the burden shifts to the defendant to show the portion of the attorney fees that are not recoverable because those fees can be attributed solely to a

nonrecoverable category of noneconomic losses.  [Citations.]  This approach complies with the statutory mandate that the amount of restitution is to be based on the 'loss claimed by the victim' and the designated right of the defendant to a hearing 'to dispute the determination of the amount of restitution.' " (*Fulton*, at p. 886.)

Two years later in *Jennings*, *supra*, 128 Cal.App.4th 42, a majority panel of this court held a defendant was entitled to an offset for a portion of payments made by an insurance company to his victim, who he injured while he was driving with a 0.16 blood-alcohol level.  (*Id*. at pp. 46, 49-50.)  The victim had signed a settlement agreement with the insurer to accept $105,000 in exchange for a release of the defendant and his mother from further civil liability arising from the accident; the settlement agreement "conditioned execution of the release on 'an agreed allocation of the settlement amount of 15 percent to medical expenses and 85 percent to pain and suffering . . . .' " (*Id*. at p. 47.)  The main focus on appeal was whether the defendant was an insured entitled to an offset.  The majority held he was, and that the portion of the defendant's civil settlement covering the economic losses—15 percent of the $105,000 settlement agreement amount—should be offset against the amount of the defendant's restitution obligation.  (*Id*. at p.

14

58.)[6] We ordered the defendant's restitution obligation modified to reflect a credit for that amount tendered by his insurer to pay for the victim's medical expenses, less amounts allocated to attorney fees. (*Id.* at pp. 58-59.)

Since this court decided these cases, it has become well understood in this context that a criminal defendant faced with an obligation to pay a victim's attorney fees as restitution has the burden of proving both the nature of the attorney fee award—whether it includes fees to recover general or noneconomic damages—as well as the proper apportionment between recoverable and nonrecoverable fees, i.e., those incurred to recover economic medical and other expenses versus those incurred to recover noneconomic

---

[6] Justice Benke dissented in *Jennings, supra,* 128 Cal.App.4th 42. She disagreed with *Bernal, supra,* 101 Cal.App.4th 155, reasoning that "allowing a defendant to offset a direct restitution obligation with monies paid by his liability insurer effectively disengages the amount of direct restitution the defendant must pay from the calculation of the harm caused and thus steals from the restitution obligation its intended rehabilitative and deterrent effect." (*Jennings,* at p. 60 (dis. opn. of Benke, J.).) She also felt the majority improperly expanded *Bernal* to include a defendant who had not himself obtained and paid for the liability insurance that funded the settlement. (*Jennings,* at pp. 61-62 (dis. opn. of Benke, J.); see also *People v. Vasquez, supra,* 190 Cal.App.4th at p. 1135.) The California Supreme Court denied review in *Jennings* in July 2005.

pain and suffering damages.  (*Vasquez, supra*, 190 Cal.App.4th at p. 1137,[7]

citing *People v. Millard, supra*, 175 Cal.App.4th at pp. 33-34; see also *People*

*v. Grundfor, supra*, 39 Cal.App.5th at p. 30.)

## IV.  *Contentions*

Go contends his second amended complaint properly alleges

defendants' malpractice caused him damages, and that the court erred by

sustaining defendants' demurrer to both causes of action for legal malpractice

and breach of contract.  Specifically, he argues that defendants had a duty

but failed to advise him of foreseeable consequences of entering into the civil

settlement, including that he could become liable for restitution in the

amount of the attorney fees paid to settle the case.  He points out that despite

the law holding that a restitution award may be set off by attorney fees

incurred to recover economic damages where the loss can be rationally

divided or allocated between economic and noneconomic damages, defendants

---

[7]     *People v. Vasquez, supra*, 190 Cal.App.4th 1126, relied upon by
defendants below, held a trial court properly denied a defendant's motion to
order his restitution obligation ($168,633.20 in medical expenses his victim
had incurred "so far") satisfied by a civil settlement.  (*Id*. at pp. 1136-1138.)
The Court of Appeal acknowledged that at most, the defendant had a right to
an offset for the portion of the civil settlement made on his behalf and
allocable to medical expenses included in the restitution order, amounting to
no more than $22,335.  (*Id*. at pp. 1137-1138.)  However, it held he had not
carried his burden to show a proper apportionment between recoverable
(economic) and nonrecoverable (noneconomic) losses.  (*Id*. at p. 1137.)
Because the victim had incurred additional medical expenses after the date of
the restitution order, the Court of Appeal held the trial court "reasonably
inferred the portion of the civil settlement attributable to medical expenses
did not include those expenses included in the court's restitution order.
Rather, as contemplated at the time the restitution order was entered, [the
victim] recovered in her civil action sums for additional losses (both economic
and noneconomic) she had sustained."  (*Id*. at p. 1138.)  Thus, the court held
the trial court did not abuse its discretion by ruling the defendant had failed
to establish entitlement to an offset.  (*Ibid*.)

16

did not divide or allocate the attorney fees incurred on recoverable losses, or make any attempt to negotiate that point in the civil settlement. Go points to his allegations that if defendants had properly advised him that the exhaustion of his policy would have left him exposed to future restitution liability, he would not have consented to the settlement but would have had defendants insist on a full release of all civil and criminal liability. He argues defendants' advice or lack of advice led him to believe he would be released from all future liability to Silva, and they were a " 'substantial factor,' perhaps not the only factor, that led to [his] damages."

Go also argues his second amended complaint alleges the "settlement agreement could have been drafted to, among other things, minimize criminal restitution including allocations of payers [*sic*] between economic and non-economic damages for purposes of setoff." He argues defendants owed him the duties by virtue of their attorney-client relationship, and defendants knew or should have known it was foreseeable he would face a restitution hearing as a result of the collision, and the adverse legal ramifications.

Go further challenges defendants' arguments based on Insurance Code section 533.5 on grounds this matter involves negligent driving (as opposed to a willful act) and defendants' separate fiduciary obligations to him to give competent advice regarding the civil settlement.

Finally, Go argues his second amended complaint properly alleges a duty and breach thereof, in part pointing to *Nichols v. Keller* (1993) 15 Cal.App.4th 1672, for the proposition that lawyers may have an obligation to advise their clients of legal problems that are apparent " 'even though they fall outside the scope of retention.' "

17

V. *Analysis*

A. *Duty of Care*

We begin with the element of duty, since absent a duty of care, there can be no breach and no negligence. (*Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267.) Though the court did not base its ruling on the existence or nonexistence of a duty of care, defendants argue that Go's second amended complaint is legally defective because the criminal prosecution and resultant restitution order were outside the scope of their duty, which was limited to defending him in the wrongful death civil lawsuit. They assert there is no allegation they were hired to do anything or give advice with respect to any criminal matter. In making this claim, they acknowledge an attorney's engagement denotes the scope of the duties he or she undertakes.[8]

We reject the suggestion that an attorney cannot be sued for malpractice with respect to matters outside the scope of his or her client contract or retainer agreement. (See *Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, 940 ["We find no support for defendants' broad assertion that 'an attorney cannot be sued in malpractice for failing to raise claims beyond the scope of a retainer agreement' "].) "True, the extent of an attorney's duty to act necessarily depends on the scope of the attorney-client relationship [citation], and the scope of this relationship may be limited by the agreement between the attorney and the client. [Citation.] But an attorney who undertakes one matter on behalf of a client owes that client the duty to at least consider and advise the client if there are apparent related matters that the client is overlooking and that should be pursued to avoid prejudicing the client's interests. '[E]ven when a retention is expressly

---

[8]     Defendants do not provide a record citation to their retainer or other agreement to provide Go services.

18

limited, the attorney may still have a duty to alert the client to legal problems which are reasonably apparent, even though they fall outside the scope of the retention.'" (*Janik*, at p. 940, citing *Nichols v. Keller, supra,* 15 Cal.App.4th at p. 1684 & *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983-985.)[9]

Here, Go's allegations demonstrate his claims rely at least in part on an asserted duty *within* the scope of defendants' representation: to competently draft the settlement and release in the civil wrongful death action. Liberally construing Go's pleading as we must, which shows Go had pending criminal charges at the time of the settlement, we conclude the duty here extended to making efforts to preserve Go's ability to offset some or all of the insurance payment against a potential criminal restitution award. Even if the criminal matter was technically outside the scope of defendants' retainer, a question we cannot determine on the pleadings or this record, we would hold Go's

---

[9] The court in *Nichols v. Keller* more fully explains: "One of an attorney's basic functions is to advise. Liability can exist because the attorney failed to provide advice. Not only should an attorney furnish advice when requested, but he or she should also volunteer opinions when necessary to further the client's objectives. The attorney need not advise and caution of every possible alternative, but only of those that may result in adverse consequences if not considered. . . . The rationale is that, as between the lay client and the attorney, the latter is more qualified to recognize and analyze the client's legal needs. The attorney need not represent the client on such matters. Nevertheless, the attorney should inform the client of the limitations of the attorney's representation and of the possible need for other counsel." (*Nichols v. Keller*, *supra*, 15 Cal.App.4th at p. 1684.) Defendants seek to factually distinguish *Nichols* as well as another case Go cites, *Novak v. Low, Ball & Lynch* (1999) 77 Cal.App.4th 278. But the general principles expressed in those cases, as in *Novak* that an attorney hired by an insurer to defend a claim owes a high duty of care to both the insurer and insured (*Novak*, at p. 283) particularly in settlement negotiations after litigation is filed (*id*. at p. 284, fn. 3), are relevant here notwithstanding the factual differences.

19

allegations are sufficient. Under the circumstances, and the law going back to 2002-2004 (*Bernal, supra,* 101 Cal.App.4th 155, *Fulton, supra,* 109 Cal.App.4th 876, and *Jennings, supra,* 128 Cal.App.4th 42) pertaining to the intersection between civil settlements stemming from criminal conduct and criminal restitution, the legal problem of a potential criminal restitution award of attorney fees expended by his victim in obtaining the civil settlement should have been "reasonably apparent" (*Janik v. Rudy, Exelrod & Zieff, supra,* 119 Cal.App.4th at p. 940) to defendants.

Defendants argue that the later criminal restitution proceedings were "*entirely speculative* when the settlement of the wrongful death action was concluded with the full release and payment of the policy limits" and thus they had no duty with regard to how the civil settlement might be construed or interpreted in those proceedings. But as stated above, criminal restitution is mandatory for a victim's economic losses, which include attorney fees incurred by the victim in the respects discussed above. We cannot say in this instance, where Go's criminal case was pending when defendants settled Silva's civil action and the state of the law, the potential for a criminal restitution award was so speculative to eliminate their duty to structure the civil settlement to minimize it.

We are unpersuaded by defendants' seeming reliance on the proposition that Go's insurer had the right and duty to accept Silva's policy limit demand and settle the case within the policy limits. In part, the argument is based on *New Plumbing Contractors, Inc. v Edwards, Sooy & Byron* (2002) 99 Cal.App.4th 799, which defendants do not discuss in any detail. In *New Plumbing,* the insured, a contractor, sued its insurer's counsel for professional negligence and breach of fiduciary duty for settling an earlier action without notifying it and "ignoring valid defenses that would have

20

absolved [it] of any liability" causing it to pay "higher premiums . . . lower coverage and higher deductibles, and [requiring it to] deal with financially weaker carriers to obtain insurance thereafter." (*Id.* at p. 801.)  The Court of Appeal affirmed a summary judgment based on the absence of causation, but specifically in view of "a policy provision giving an insurance company discretion to settle as it sees fit . . . ." (*Id.* at p. 802.)  In that instance, "the insurer is 'entitled to control settlement negotiations without interference from the insured,' and generally, it has no liability to the insured for settling within the policy limits.  [Citation.]  Thus, there is no cause of action where the insured claims the settlement injured its business reputation [citation], nor any where the insured claims the settlement unfairly used up its deductibles.  [Citation.]  . . .  [¶]  Since [the insurer] could settle without consulting [the insured] and over its objection, counsel's recommendation of settlement was not a cause of any harm the [insured] may have suffered." (*Ibid.*)

Go's pleading and the record are absent any indication Go was subject to any such policy provision.  These principles do not prevent him from alleging viable claims.

B. *The Second Amended Complaint Adequately Alleges Causation and Damages with Respect to the Settlement Agreement's Drafting*

With regard to causation and damages, our task is only to decide whether the second amended complaint includes facts which, if accepted as true, would allow a trier of fact to conclude the defendants' alleged negligence caused Go damage.  To do so, there must be factual allegations explaining how defendants' alleged negligent act or acts prevented Go from obtaining a more favorable result.  (*Charnay v. Cobert, supra,* 145 Cal.App.4th at p. 180.)

21

Under the principles discussed above, it was not possible for Go's civil settlement to eliminate his legal obligation to pay criminal restitution to his victim. "[T]he cases construing [Penal Code] section 1202.4 and the effect of a crime victim's acceptance of a civil settlement on the defendant's obligation to satisfy a restitution order have all concluded a civil settlement and release/waiver of liability by the victim do not preclude or necessarily satisfy a properly entered restitution order." (*People v. Vasquez, supra*, 190 Cal.App.4th at p. 1137, citing *Vigilant Insurance. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 445, *Bernal, supra*, 101 Cal.App.4th at p. 164 & *Short, supra*, 160 Cal.App.4th at p. 903.)

However, Go alleged another theory that renders his causes of action viable so as to survive defendants' demurrer. He alleges that "[t]he form of the release drafted by the defendants fails to address, much less attempt to prevent (or minimize), a criminal restitution obligation by set off or otherwise." (Some capitalization omitted.) These factual allegations satisfy the elements of causation and damage. They permit a fact-finder to conclude that defendants negligently structured or drafted his settlement in the civil action, failing to reach some agreement to allocate the civil settlement between economic and noneconomic damages so as to minimize the restitution award in his then-pending criminal case. (Accord, *Jennings, supra*, 128 Cal.App.4th at p. 47.) These are specific allegations of conduct by defendants that prevented a more favorable result, namely Go's ability to offset some of his obligation to pay victim restitution in his criminal case by establishing that allocation. And liberally construed, they support the notion that Go's counsel prevented a more favorable result in Silva's action (as

22

opposed to just Go's criminal case), that is, a more comprehensive settlement inuring to Go's financial benefit.[10]

Because this theory supports Go's legal malpractice and breach of contract claims, it is of no moment that Go's pleading contains other theories that would not support his claims. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 [" ' "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory . . . ." ' "]; *Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 611-612 [A complaint will " ' "survive[ ] a general demurrer insofar as its states, however inartfully, facts disclosing some right to relief" ' "]; *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 [" '[i]f the complaint states a cause of action under *any* theory, . . . that aspect of the complaint is good against a demurrer,' " italics added].) Because Go's second amended complaint states causes of action on a viable theory, it survives demurrer. Go's possible inability or difficulty in proving these allegations is not a factor in our analysis. (*New Livable California v. Association of Bay Area Governments* (2020) 59 Cal.App.5th 709, 714.)

Defendants argue Go's position that they should have structured the release differently by allocating economic versus non-economic damages "is of no avail" given the statutory nature of a civil wrongful death action and its remedies. They point out that the economic damages recoverable by a wrongful death plaintiff are burial and funeral expenses as well as lost

---

10     We note Go could also allege that defendants prevented a more favorable result by providing as part of the settlement that the parties would bear their own attorney fees. (Accord, *People v. Grundfor, supra,* 39 Cal.App.5th at pp. 28, 29.)

23

income and financial support.  Defendants maintain that "[a]ttorneys' fees are not economic damages recoverable by a wrongful death plaintiff." (Capitalization omitted.)  The argument is misplaced.  The question is not what damages Silva was entitled to recover, but whether the attorney fees she expended to recover those damages are awardable as restitution (they are under [Penal Code] section 1202.4, subdivision (h)), and whether those fees could be "reasonably divided between the pursuit of economic as opposed to noneconomic losses" (*Fulton*, *supra*, 109 Cal.App.5th at p. 885) such that Go's insurer's settlement payment might offset some of that award.  The challenge in this respect lacks merit.

C.  *Insurance Code Section 533.5*

We finally reject defendants' argument concerning the asserted bar of Insurance Code section 533.5 on Go's claims.  That section provides in part: "No policy of insurance shall provide, or be construed to provide, any coverage or indemnity for the payment of any fine, penalty, or restitution in any criminal action or proceeding . . . ."  (Ins. Code, § 533.5, subd. (a).)  According to defendants, "Insurance Code Section 533.5 *expressly and clearly* provides that the Allstate policy could not, as a matter of law, provide indemnity for the later imposed criminal restitution . . . .  The plain language of the section prohibits coverage of restitution payments in a criminal action regardless of the terms of the settlement of the wrongful death action."

Offsetting a criminal defendant's insurer's duplicative insurance payments to a victim against that defendant's criminal restitution obligation to the same victim is not a matter of insurance coverage or indemnity.  It does not construe Go's insurance policy as covering restitution, rather, it deems the insurer's payment to Silva as coming directly from Go within the meaning of the restitution statute, entitling him to offset his restitution

24

obligation for the attorney fees she incurred that are properly allocated to the recovery of her medical costs or other economic damages.  (Pen. Code, § 1202.4, subd. (a)(1); *Bernal, supra,* 101 Cal.App.5th at p. 155; *Vasquez, supra,* 190 Cal.App.4th at p. 1134; *Short, supra,* 160 Cal.4th at p. 905.)

## DISPOSITION

The judgment in favor of defendants Jay McClaugherty and McClaugherty and Associates is reversed and the matter remanded with directions that the court enter a new order overruling defendants' demurrer. Go shall recover his costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.