[No. G040033. Fourth Dist., Div. Three. Feb. 18, 2009.]

PATRICK CROSBY, Plaintiff and Appellant, v.
SOUTH ORANGE COUNTY COMMUNITY COLLEGE DISTRICT,
Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*The opinion is ordered published in the Official Reports, with the exception of part IIB., C., and D.

434

## COUNSEL

Patrick Crosby, in pro. per., for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Mary L. Dowell, David A. Urban and Jennifer M. Rosner for Defendant and Appellant.

## OPINION

ARONSON, J.—Administrators at Saddleback College placed a temporary hold on plaintiff Patrick Crosby's student records pending an interview with an administration official regarding two incidents that occurred in Saddleback College's library. In the first incident, campus police detained plaintiff for viewing MySpace member profiles on a library computer. The second involved an argument between plaintiff and a librarian concerning the latter's request to turn down the volume of music plaintiff was listening to while wearing headphones. Although administrators released the hold on plaintiff's records after he met with them, plaintiff sued defendant South Orange County Community College District (District). He alleged its policy restricting a student's use of the school's Internet system to "appropriate academic, professional and institutional purposes" violated Education Code section 66301,[1] which prohibits a state college from disciplining a student for on-campus conduct that the First Amendment free speech clause would protect if the conduct occurred off campus. The trial court granted summary adjudication for the student, holding that the District's Internet use policy was overbroad on its face and violated section 66301. After plaintiff dismissed his remaining cause of action, the court entered judgment requiring the District to amend its policy.

[1] All statutory references are to the Education Code unless otherwise indicated.

Plaintiff contends the trial court's judgment did not go far enough because it did not eliminate all restrictions on Internet use or invalidate a District regulation based on the policy. Plaintiff also contends the trial court improperly refused his attempts to amend his complaint to add other causes of action, and improperly refused to compel the production of documents in discovery and the attendance of certain District personnel at trial. Plaintiff also argues section 66300, authorizing state colleges to create disciplinary rules for students, is unconstitutional. The District cross-appeals, contending the court erred in determining the District's Internet use policy violated section 66301.

■ In the published portion of our opinion, we conclude the trial court's judgment sufficiently addressed any asserted conflict between the District's policy and section 66301. Section 66301 provides students at California's state universities and community colleges the same free speech rights on campus that they have off campus. It does not, as plaintiff suggests, provide students the same free speech rights guaranteed to them in the privacy of their own homes. A state college or university, like any other governmental entity, may reserve a particular forum for its intended purposes, as long as the regulation on speech is reasonable and not an effort to suppress expression contrary to the views of school officials. As with public libraries, Internet use in school libraries is neither a traditional nor a designated public forum. Accordingly, the District's policy limiting computer use to educational and employment purposes does not violate section 66301.

In the unpublished portion of the opinion, we conclude the trial court did not abuse its discretion in denying plaintiff's efforts to amend the complaint because plaintiff did not act diligently in seeking leave. Moreover, plaintiff has failed to demonstrate the trial court abused its discretion in failing to compel the production of documents and witnesses. Finally, we reject plaintiff's contention that section 66300 is unconstitutional because plaintiff raises the issue for the first time on appeal.

Accordingly, we affirm. Because the District has requested we not reach its cross-appeal if we do not grant plaintiff's requested relief, we do not consider whether the trial court erred in determining the Board's policy violated section 66301.

I

FACTUAL AND PROCEDURAL BACKGROUND

Saddleback College library provides Internet services to its students. The District's board policy No. 4000.2 restricted use of the District's Internet

service to "appropriate academic, professional and institutional purposes." The policy provides that use of the school's Internet facilities for unauthorized purposes may result in disciplinary action. The District's administrative regulation No. 4000.2, based on board policy No. 4000.2, contains an enumerated list of 21 prohibited uses of the school's Internet system, including "[v]iewing, transmitting, or otherwise engaging in any communication which contains obscene, indecent, profane, lewd, or lascivious material or other material which explicitly or implicitly refers to sexual conduct," and "[d]isplaying sexually explicit or sexually harassing images or text in a private and/or public computer facility or location that can potentially be in view of other individuals."

Plaintiff alleges that on June 27, 2006, while a Saddleback College student, he logged into a computer workstation at the college's library and accessed a Web site named MySpace. While plaintiff was reviewing member profiles, a campus police officer tapped plaintiff on his shoulder and asked plaintiff to accompany her to a private section in the library. There, the officer accused plaintiff of viewing pornographic material in violation of District policy. Plaintiff denied viewing pornographic images, explaining he had merely been looking at MySpace profiles, "which are generally not pornographic." The officer replied that MySpace was a "kid's site" and plaintiff's age, 58 at the time, made it inappropriate for him to view the site. The officer informed plaintiff he could look at the site in the privacy of his own home, but not at Saddleback College. Plaintiff then left the library.

On July 18, 2006, plaintiff wore a set of headphones available at the Saddleback College library to listen to a recording of classical music. After almost a half-hour into the recording, the music reached a loud crescendo, prompting the librarian, who had been sitting 70 feet away, to approach and request plaintiff turn the volume down. Disgusted, plaintiff argued with the librarian, explaining that "since he was a student, and she a paid employee, she should have been willing to put up with the minimal annoyance of sound coming from the library's own headphones, on the library's own sound equipment." Plaintiff told the librarian that this was his second unpleasant library experience in less than a month, and that he was considering suing Saddleback College and whoever made the prior false accusation that he was viewing pornography. As a result of the argument, the campus police were called, and a report filed.

On July 21, 2006, the vice-president of student services, Lise Telson, sent plaintiff a letter referencing the two library incidents, and explaining that the school's student code of conduct prohibits disruptive behavior and that a "[f]ailure to show respect for the standards . . . is a cause of disciplinary action." The letter noted Telson had made numerous attempts to reach

plaintiff by phone, and that plaintiff should schedule an appointment with her to address the incidents described in the letter. The letter cautioned: "Should you fail to meet with me further action may be taken, including restriction of access to the College facilities and services." The day after plaintiff received the letter, he briefly encountered Telson, who explained she did not have time that day to meet with him. Telson warned plaintiff he would face negative consequences if he did not meet with her later. Plaintiff responded, "Go ahead and suspend me. I dare you." Because plaintiff failed to meet with Telson, Saddleback College put a hold on plaintiff's student records, preventing him from registering for classes. After a series of demands to lift the hold, plaintiff met with Telson. At the meeting, Telson agreed to give plaintiff a "fresh start" without imposing discipline.

Plaintiff sued the District, alleging in his original complaint causes of action for (1) violation of the free speech protections of section 66301; (2) improper student disciplinary policy and maintenance of student files; and (3) a claim for age and sexual orientation discrimination under the Unruh Civil Rights Act (Civ. Code, § 51 et seq.) and other antidiscrimination laws. The trial court sustained the District's demurrer to plaintiff's second and third causes of action, with leave to amend. Plaintiff filed a first amended complaint, which included 20 causes of action. On March 9, 2007, the trial court sustained demurrers to all but the first cause of action in the amended complaint without leave to amend. The court found the other causes of action "undecipherable and somewhat bizarre," and noted that the court had previously granted leave only to amend the second and third causes of action, not to add new ones. As a result, only the first cause of action, alleging board policy No. 4000.2 violated section 66301, remained.

On May 18, 2007, plaintiff brought a motion for summary judgment or, in the alternative, summary adjudication on the first cause of action. On August 3, 2007, the trial court granted summary adjudication for plaintiff on part of his first cause of action. The court determined the first cause of action set forth two distinct challenges to board policy No. 4000.2: a facial challenge, and a challenge as applied to plaintiff. The court granted summary adjudication on the facial challenge, ruling that board policy No. 4000.2's use of the phrase "appropriate academic, professional or institutional purposes" was overbroad, noting: "It leaves to the Board's discretion what is 'appropriate' and what is not. E.C. § 66301 states students can engage in speech, conduct or communications on campus the same as they can off campus, whether the Board deems it appropriate or not." Because the court determined the policy violated a statute, it did not reach the constitutional issues. The court noted that plaintiff's "as applied" challenge to board policy No. 4000.2 involved disputed issues of fact.

On June 1, 2007, while plaintiff's summary adjudication motion was pending, plaintiff filed a motion for leave to amend his complaint. On August 27, 2007, the trial court denied plaintiff's motion to amend, determining that allowing an amendment at that point would prejudice the District. The court noted discovery had been completed and the District had a summary judgment motion pending. The court explained that granting the requested amendment would require vacating the trial date and reopening discovery.

On November 26, 2007, the court heard plaintiff's request for a final order granting injunctive and declaratory relief based on the trial court's earlier summary adjudication order. At the hearing, plaintiff requested dismissal of his "as applied" challenge to board policy No. 4000.2 remaining in his first cause of action. At the court's request, the parties submitted proposed final judgments. The trial court selected the District's version. The judgment declared that the then current board policy No. 4000.2 does not meet the requirements of section 66301, and required the District to revise the policy within 90 days. The order attached a copy of a draft revising board policy No. 4000.2 and provided that the District's enactment of the revised policy would satisfy the judgment. On December 11, 2007, the District notified the trial court that it had adopted the revised policy. On January 7, 2008, the trial court entered the judgment.

Although having prevailed, plaintiff appeals the judgment, contending that the relief granted did not comply with section 66301, that section 66300 is both unconstitutional on its face, and as applied to plaintiff, and that the trial court erred in denying leave to amend, failing to enforce discovery requests, and failing to order certain witnesses for trial. The district filed a cross-appeal challenging the trial court's summary adjudication for plaintiff, and a protective cross-appeal challenging the constitutionality of section 66301 in the event we grant plaintiff's request for further relief on appeal. In its reply brief, however, the District requests we treat both of the issues it raises as protective cross-appeals, advising "that this Court only needs to reach the merits of the cross-appeal if it determines that Plaintiff's own appeal has merit as to the Trial Court's final judgment. . . . The Court's consideration of this case can, and should, stop at Plaintiff's appeal, with a decision to affirm the Trial Court."

II

DISCUSSION

A. *The Revised Board Policy No. 4000.2 Does Not Violate Section 66301*

Plaintiff contends the trial court's order did not go far enough because it left in place restrictions on school computer use. We disagree.

 Plaintiff asserts the District may not place institutional regulations regarding the content of speech beyond that which exist under generally applicable law. Plaintiff argues section 66301 allows students at California's state universities and community colleges *"the same free speech rights* guaranteed them in the privacy of their own homes." Plaintiff runs into a simple problem in advancing this argument: the statute does not state that students may exercise the same free speech rights they have in their homes.

Section 66301, subdivision (a), provides: "Neither the Regents of the University of California, the Trustees of the California State University, the governing board of a community college district, nor an administrator of any campus of those institutions, shall make or enforce a rule subjecting a student to disciplinary sanction solely on the basis of conduct that is speech or other communication that, when engaged in outside a campus of those institutions, is protected from governmental restriction by the First Amendment to the United States Constitution or Section 2 of Article I of the California Constitution."

Fairly read, section 66301 simply states that students have the same free speech rights on campus that they have off campus. Plaintiff's interpretation would provide free speech protection for any act on campus that would be permitted if it occurred in the home. This interpretation not only disregards the plain language of the statute, but would lead to absurd results. For example, a student could not be sanctioned for standing up in the middle of a lecture and yelling expletives. Moreover, nothing in section 66301's history suggests the Legislature intended to provide college campuses with greater free speech protection than that available outside of the campus. The Legislature passed section 66301 in 1992 against the backdrop of the United States Supreme Court decision in *Hazelwood School District v. Kuhlmeier* (1988) 484 U.S. 260 [98 L.Ed.2d 592, 108 S.Ct. 562]. In *Hazelwood*, the court held that students enjoyed substantially less free speech rights in secondary schools than enjoyed by citizens in public life generally. Section 66301 was passed in part to redress this perceived disparity in rights. Accordingly, in determining a student's free speech rights on campus, a court must consider the contours of those rights off campus.

 It is beyond dispute free speech rights off campus are not unfettered. Indeed, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." (*Heffron v. Int'l Soc. for Krishna Consc.* (1981) 452 U.S. 640, 647 [69 L.Ed.2d 298, 101 S.Ct. 2559].) "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which 'have immemorially been held in trust for the use of

the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' [Citation.] In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. [Citation.] The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." (*Perry Ed. Assn. v. Perry Local Educators' Assn.* (1983) 460 U.S. 37, 45 [74 L.Ed.2d 794, 103 S.Ct. 948] (*Perry*).)

■ "A second category consists of public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. [Citations.] Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum. Reasonable time, place, and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." (*Perry, supra*, 460 U.S. at pp. 45–46, fn. omitted.)

"Public property which is not by tradition or designation a forum for public communication is governed by different standards. . . . In addition to time, place, and manner regulations, *the State may reserve the forum for its intended purposes*, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. [Citation.] . . . ' " '[T]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.' " ' " (*Perry, supra*, 460 U.S. at p. 46, italics added.)

■ The public forum outside of the university context most closely resembling Saddleback College library is a public library. Addressing public library Internet access, a plurality of the Supreme Court has observed: "Internet access in public libraries is neither a 'traditional' nor a 'designated' public forum. [Citation.] First, this resource—which did not exist until quite recently—has not 'immemorially been held in trust for the use of the public and, time out of mind, . . . been used for purposes of assembly, communication of thoughts between citizens, and discussing public questions.' [Citation.] We have 'rejected the view that traditional public forum status extends beyond its historic confines.' [Citation.] The doctrines surrounding traditional public forums may not be extended to situations where such history is lacking.

"Nor does Internet access in a public library satisfy our definition of a 'designated public forum.' To create such a forum, the government must make an affirmative choice to open up its property for use as a public forum. [Citations.] 'The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse.' [Citation.] . . . [¶] . . . A public library does not acquire Internet terminals in order to create a public forum for Web publishers to express themselves, any more than it collects books in order to provide a public forum for the authors of books to speak. It provides Internet access, not to 'encourage a diversity of views from private speakers,' [citation], but for the same reasons it offers other library resources: to facilitate research, learning, and recreational pursuits by furnishing materials of requisite and appropriate quality." (*United States v. Am. Library Assn., Inc.* (2003) 539 U.S. 194, 205–206 [156 L.Ed.2d 221, 123 S.Ct. 2297].)

Nothing in the record suggests the District designated Saddleback College's library a public forum. Thus, the District "may reserve the forum for its intended purposes . . . as long as the regulation . . . is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." (*Perry, supra,* 460 U.S. at p. 46.) Accordingly, the limitation of computer use to educational and employment purposes found in revised board policy No. 4000.2 is an acceptable limitation, and does not represent a public official's effort to silence opposing viewpoints.

Plaintiff also contends the judgment did not go far enough because it did not invalidate administrative regulation No. 4000.2, which is based on board policy No. 4000.2. Plaintiff's first cause of action, however, did not challenge administrative regulation No. 4000.2, and he failed to request invalidation of that regulation in the prayer. The trial court invalidated only a small portion of board policy No. 4000.2; wholesale invalidation of administrative regulation No. 4000.2 would have been inappropriate. Moreover, plaintiff does not identify in his briefs any particular provision of administrative regulation No. 4000.2 to which he objects.

Plaintiff also contends the judgment is inadequate because it does not restrain the District or Saddleback College officials and personnel from continuing to enforce the former board policy No. 4000.2 against the students. But plaintiff obtained summary adjudication only on his facial challenge to board policy No. 4000.2, and dismissed his "as applied" challenge. Because the trial court determined a triable issue of fact existed as to the propriety of the conduct of the Saddleback College employees, issuing a permanent injunction barring specific conduct would have been improper. Accordingly, the trial court did not err in limiting relief to declaring the former policy invalid and requiring the adoption of a revised policy.

B.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The judgment is affirmed. In the interests of justice, each party is to bear its own costs of this appeal.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied March 19, 2009, and the opinion was modified to read as printed above. The petition of appellant Patrick Crosby for review by the Supreme Court was denied June 10, 2009, S171570.

---

*See footnote, *ante*, page 433.