Filed 10/27/25  Keller v. Bisno CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KATHERINE D. KELLER,<br><br>    Cross-complainant and Respondent,<br><br>v.<br><br>JEANETTE ANN BISNO,<br><br>    Cross-defendant and Appellant. | B334054<br><br>(Los Angeles County<br>Super. Ct. No.<br>18STCV09206) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James E. Blancarte, Judge.  Affirmed in part and reversed in part.

Law Offices of Robert H. Bisno and Robert H. Bisno for Cross-defendant and Appellant.

Willoughby & Associates, Anthony Willoughby and Anthony Willoughby II for Cross-complainant and Respondent.

_____

This case involves a dispute over a parking space that unfortunately made its way into a courtroom. The dispute led to a misdemeanor assault conviction followed by this civil judgment in the aggregate amount of $193,255. This reflects overzealous litigation and waste of judicial resources.

Jeanette Ann Bisno (Bisno) appeals from the judgment that she is liable to Katherine D. Keller (Keller) for assault, battery, and intentional infliction of emotional distress. We affirm the judgment against Bisno for assault and battery and Keller's $10,355 award of special damages for economic loss. However, we reverse the judgment in favor of Keller for intentional infliction of emotional distress and her $28,900 award of general damages for noneconomic loss. The jury awarded damages improperly based on a claim of emotional distress that was never pleaded and never the subject of a motion to amend. Additionally, the trial evidence was insufficient to support the cause of action as pleaded. We also reverse Keller's $154,000 punitive damages award for insufficient evidence of Bisno's ability to pay and improper argument by Keller's counsel.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     The Parking Space Dispute**

On December 13, 2018, Keller and Bisno were each looking for a parking space inside a Beverly Hills parking structure. Keller drove into a parking space and noticed Bisno's car stopped directly behind her. When Keller left her car, Bisno approached on foot, screamed threats and obscenities, and demanded Keller vacate the parking space. Keller was carrying a cup of coffee and began to walk away. Bisno followed, knocked the coffee cup from Keller's hand, pushed her, and kicked the fallen cup.

2

According to Bisno, Keller was behind her in the line of drivers seeking an empty parking space. Suddenly, Keller passed Bisno on the right and pulled into a parking space for which Bisno had been waiting. Bisno emerged from her car to speak to Keller, who immediately refused to move her car. Keller approached Bisno, carrying a coffee cup. Bisno feared she would be harmed. Bisno admitted to having pushed Keller and knocking the coffee cup from her hand. Bisno then kicked the cup out of the way so Keller could not grab it and throw coffee at her. Bisno agreed she "did overreact."

The parking structure's video camara captured the incident. After police arrived and watched the video recording, they found Bisno.[1] She was cited and released on a charge of misdemeanor battery.

## II.     Relevant Pretrial Proceedings

On December 20, 2018, Bisno, represented by her husband Robert H. Bisno (Attorney Bisno), filed a lawsuit against "Doe" defendants for assault, battery, intentional infliction of emotional distress, false imprisonment, and false arrest.

On March 8, 2019, a misdemeanor complaint was filed charging Bisno with committing simple battery against Keller.

On March 13, 2019, Bisno was arraigned on the misdemeanor complaint and pleaded not guilty. She was represented by Attorney Bisno.

On March 14, 2019, Bisno amended her lawsuit to substitute Keller as a Doe defendant.

On June 20, 2019, Keller filed a cross-complaint against Bisno for assault, battery, intentional infliction of emotional

---

[1] The video recording was played for the jury during trial.

3

distress, violating Civil Code section 52 (Bane Act) and malicious prosecution.

On October 29, 2019, Bisno pleaded no contest to simple assault.[2] She was placed on summary probation, ordered to complete community service and an anger management class, and to pay statutory fines and fees.

On December 2, 2020, a restitution hearing was held in criminal court. Anthony Willoughby, Keller's retained counsel on her cross-complaint, requested attorney fees be awarded to Keller as victim restitution under Penal Code section 1202.4.[3] The criminal court denied the request.

On December 4, 2020, Bisno dismissed her lawsuit against Keller without prejudice.

## III.  Motions In Limine

Both parties brought pretrial motions in limine. Pertinent here, the trial court granted Bisno's motions to prevent Keller and Attorney Willoughby from referring to any matters beyond the assault, battery, and intentional infliction of emotional distress causes of action as alleged in the cross-complaint.

---

[2] The criminal court's minute order shows a battery conviction under Penal Code section 242. But the Misdemeanor Advisement of Rights, Waiver, and Plea Form shows Bisno pleaded no contest to assault under Penal Code section 240.

[3] Attorney Bisno continued to represent Bisno throughout the trial, posttrial motions, and now on appeal. Likewise, Attorney Willoughby remained Keller's counsel of record throughout the trial, posttrial motions, and now on appeal. The trial court denied Attorney Willoughby's motion to recuse Attorney Bisno from representing Bisno.

## IV.  Jury Trial and Special Verdict

On August 7, 2023, trial began.  On August 10, 2023, the jury returned a special verdict, finding for Keller on all causes of action.  Responding to questions in the special verdict form, the jury found Bisno engaged in nonconsensual touching of Keller by which Keller was reasonably offended; and Bisno caused Keller "emotional distress" by her willful, wanton, and reckless conduct.

The special verdict form asked for awards of special and general damages for the findings of liability for assault and battery and intentional infliction of emotional distress without apportionment between the causes of action.  The jury awarded Keller special damages of $9,500 for past economic loss medical expenses and $855 for future economic loss medical expenses.  The jury awarded Keller general damages of $28,000 for past noneconomic loss physical pain/mental suffering and $900 for future noneconomic loss physical pain/mental suffering.  The jury awarded Keller $154,000 in punitive damages.

## V.  Posttrial Motions and Appeal

The trial court entered judgment on August 21, 2023.  Bisno's posttrial motions for a new trial, judgment notwithstanding the verdict, and to vacate the judgment were denied.  Bisno timely filed this appeal from the judgment.

## DISCUSSION

The lack of civility between counsel is quite evident in the record.  One procedural error is largely dispositive of this appeal.  It concerns Keller's presentation of her emotional distress claim.  She was improperly allowed to try the claim against a party not named and using facts not alleged in her cross-complaint.  Moreover, there was insufficient evidence to support the

5

emotional distress claim she alleged in her cross-complaint. We also conclude the punitive damages award must be reversed.

## I. Keller's Emotional Distress Claim as Alleged in Her Cross-complaint

The elements of intentional infliction of emotional distress are: " ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050; *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.)

In her cross-complaint, Keller alleged Bisno engaged in extreme and outrageous conduct when she "verbally accosted . . . Keller, and knocked a cup of coffee out of her hands" and "willfully and intentionally blocked and obstructed . . . Keller's pathway to exit the parking structure."

Additionally, Bisno "willfully and maliciously assaulted and battered . . . Keller by forcefully pushing her in the chest with both hands causing . . . Keller [to] move backwards, and subsequently body-checking . . . Keller as she attempted to leave." Finally, Bisno's "extreme and outrageous conduct is the direct and proximate cause of . . . Keller suffering severe emotional distress that no reasonable person in a civilized society should be expected to endure because . . . Keller was forced to endure embarrassment, humiliation, mental anguish and losses to her reputation, as [Bisnos] engaged in unlawful conduct in assaulting and battering . . . Keller."

6

## II. Keller's Emotional Distress Claim as Presented at Trial

Keller's emotional distress claim was tried on the theory that Bisno and Attorney Bisno worked together to pursue a personal vendetta against her.

Attorney Willoughby told the jury in his opening statement: Attorney Bisno represented his wife at her misdemeanor arraignment on the related criminal charges. His reason for doing so was to improperly obtain Keller's "confidential and privileged" identifying information to name her in Bisno's civil complaint. Attorney Bisno also placed numerous "harassing" phone calls to Keller threatening "to ruin her financially." Bisno then filed the amended complaint against Keller "for absolutely no reason and to drive up her costs." Attorney Willoughby told the jury: "[A]fter hearing the evidence here, you will find that . . . Bisno's conduct was totally inappropriate, that they then utilized her husband's access to the legal system as an attorney and their wealth to try to ruin my client who hadn't done anything."

The opening statements of both counsel were immediately followed by Keller's direct testimony. As relevant here, over Attorney Bisno's objection, Keller testified that he telephoned her "ten times" in March 2019, "harassing me" and "threaten[ing] to ruin me financially." Keller testified: Bisno's "lawsuit that came to me was for $50,000 for them trying to say that I assaulted her and battered her and false arrest and false imprisonment [*sic*]." Keller testified: "My husband and I were both very distraught over the idea that someone who is a lawyer could sue someone for any reason without any just cause." Keller testified she had to incur the unexpected expense of hiring an attorney to defend herself against Bisno's lawsuit, which caused her "emotional

distress." The trial court overruled Attorney Bisno's objection, stating it was to be "reserve[d]" "for either a post trial motion or for a further motion outside . . . the presence of the jury."

Keller testified: "[A]fter feeling tons of anxiety and stress from being called multiple times and now being in a lawsuit, . . . I sought out emotional wellbeing balance through chiropractor [*sic*], acupuncture, and therapy." On cross-examination, Keller testified to not having "this emotional distress before the lawsuit."

In his closing arguments, Attorney Willoughby argued: The Bisnos "acted in concert, just like they acted in concert in this trial." After discovering Keller's telephone number, "they used it to locate [Keller] and start prosecuting her, and persecuting her." Attorney Willoughby argued "long before they [the Bisnos] served [Keller] with the lawsuit, [Attorney Bisno] started calling her and telling her they are going to ruin her and ruin her financially, and that starts the problem." Attorney Willoughby argued: "They don't dismiss their frivolous complaint for another two years."

In discussing the special verdict form, Attorney Willoughby asked the jury to find Keller suffered emotional distress, again, because "they" (the Bisnos) improperly obtained her name, which Attorney Bisno used to amend the civil complaint and to make multiple telephoned threats. He argued: "This lawsuit was started by them frivolously filing a lawsuit." Attorney Willoughby maintained that Keller "should be compensated for the emotional distress that they put her through." "And when you go back in that jury room, [*sic*] those two are a team."

8

## III. Scope of the Cross-complaint

The scope of the issues to be decided by the jury must be measured by the scope of the pleadings. Generally, " '[t]he pleadings establish the scope of an action and, absent an amendment to the pleadings, parties cannot introduce evidence about issues outside the pleadings.' [Citation.] When evidence is not pertinent to the issues raised by the pleadings, the evidence is irrelevant and it is proper to preclude the introduction of such evidence." (*Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1214.) In sum, a party cannot obtain relief on a cause of action not contained in its pleadings. (See *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1325–1326; *Griffin Dewatering Corp. v. Northern Ins. Co. of New York* (2009) 176 Cal.App.4th 172, 210.)

Keller's cross-complaint named Bisno alone as a cross-defendant. Keller's intentional infliction of emotion distress cause of action expressly rested on Bisno's "outrageous" assaultive conduct. As discussed, Keller's trial theory was both Bisno and Attorney Bisno were liable for intentional infliction of emotional distress by acting in concert to harass, threaten, and file a lawsuit "without cause" against her. Because this new theory of liability was not pleaded, the issues it raised were outside the scope of the cross-complaint and any supporting evidence should have been excluded. (*Schweitzer v. Westminster Investments, Inc., supra,* 157 Cal.App.4th at p. 1214.)

In concluding the trial court erred, we note Keller knew of the Bisnos' purported misconduct (harassing telephone calls and retaliatory lawsuit) when she brought her cross-complaint, having filed it after Bisno amended her lawsuit naming Keller as a defendant. Yet Keller did not seek to amend her cross-

9

complaint before or during trial to name Attorney Bisno or to assert additional facts supporting her new theory of emotional distress liability.  Nor did Keller request at the conclusion of trial to amend her cross-complaint to conform to the admitted evidence.  Absent an amendment to the cross-complaint, Keller's new theory of liability against the Bisnos could not serve as a basis for recovery.

Further, evidence of the purported harassing telephone calls and retaliatory lawsuit was not relevant to Bisno's assaultive conduct as alleged in the cross-complaint.  Thus, there was no reasonable basis to construe the emotional distress cause of action as encompassing Keller's new theory of liability.

Interestingly, the trial court did determine the telephone calls and lawsuit evidence were inadmissible.  It granted Bisno's pretrial motion in limine No. 5 in which Attorney Bisno argued this evidence should be excluded as irrelevant and prejudicial.[4] He also argued Attorney Willoughby should be prohibited from mentioning this evidence when speaking to the jury.[5]  Because

---

[4] The record does not contain the trial court's ruling on the motion in limine.  There were, however, many unreported chambers conferences during which the motion may have been granted.  Indeed, the trial court told counsel:  "You have both turned a parking lot dispute into a federal case.  I haven't spent this much time in chambers, much less on a weekend, on mega-multi-million-dollar cases that I've had before me."  In any event, Keller does not contend the court denied or failed to rule on the motion.

[5] The ruling on motion in limine No. 5 precluded Keller or Attorney Willoughby "from arguing, referring insinuating, introducing as evidence or attempting to introduce as evidence of liability or damages any of her legally protected activities or the

10

the evidence was not pertinent to the issues raised by the cross-complaint, we agree with Bisno that the trial court should have adhered to its ruling and prevented the evidence from being admitted.

Keller does not contend the motion in limine should have been denied. Instead, she argues that by not objecting, Bisno forfeited any challenge to the trial court's failure to enforce its ruling on the motion. Keller misreads her record. At the outset Attorney Bisno interposed frequent objections that were consistently overruled. A party will be excused from objecting where objection would be futile. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 727 ["[A] party need not make a continuing objection to a particular line of evidence once the party's initial objection to that line of evidence has been overruled."].) In any event, Attorney Bisno continued his efforts to convince the trial court the evidence previously ruled as inadmissible should be kept from the jury. We also reject Keller's suggestion the trial court's failure to enforce its ruling was justified because the evidentiary context in which the motion was granted had somehow changed.

## IV. Insufficient Evidence of Intentional Infliction of Emotional Distress as Alleged in the Cross-complaint

Next, we consider whether there was substantial evidence to support the emotional distress claim as alleged in the cross-complaint had evidence of the harassing telephone calls and retaliatory lawsuit been excluded.

---

legally protected actions taken by [Attorney Bisno] . . . and that [Bisno] is liable for any actions taken by [Attorney Bisno]."

11

" 'In applying this standard of review, we "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . . ." [Citation.]' [Citation.] ' "Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.' [Citation.] We do not reweigh evidence or reassess the credibility of witnesses. [Citation.] We are 'not a second trier of fact.' " (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.)

To establish intentional infliction of emotional distress, the defendant's extreme and outrageous conduct must actually and proximately cause the plaintiff severe or extreme emotional distress. (*Hughes v. Pair, supra,* 46 Cal.4th at p. 1050.) "Severe" means " 'substantial or enduring as distinguished from trivial or transitory. [Citation.] Such injury may include " 'all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea.' " ' " (*Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal.App.3d 1394, 1402, disapproved on other grounds in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4.)

The evidence at trial showed Bisno's assaultive behavior was certainly intentional and outrageous. Keller reasonably was greatly disturbed by the parking space dispute. However, Keller did not produce sufficient evidence that Bisno's conduct actually and proximately caused her to suffer *severe* emotional distress—such that it was enduring and substantial—to justify an award of damages on the claim.

Keller's own testimony supported the inference that her "mental reactions" to Bisno's outrageous conduct were transitory.

She testified it "was just a crazy incident that happened" and left her "in shock" at the time. Keller "remember[ed] being really embarrassed that [it] happened at all." The "whole experience was so overwhelming and traumatic"; "the worst day of [her] life."

Keller's healthcare expert witnesses relied on either their memories or copies of bills they had sent to Keller for services rendered. No medical records were produced in support of their testimony.

Jeremy Brook, Keller's chiropractor, began treating her in 2021, three years after the incident. Brook opined Keller "had been under a lot of emotional stress" from having been "attacked" in a parking structure and "the person was now suing her."

Carla Vidor testified as Keller's acupuncturist and practitioner of "Chinese medicine." Vidor began treating Keller in September 2019 or perhaps earlier and was still treating her at the time of trial. Vidor opined the acupuncture was helping Keller "manage" her "anxiety." Vidor recalled Keller was crying and "shaken up" on one occasion about an altercation.

By contrast, Keller repeatedly testified her emotional distress ("tons of anxiety and stress") was the result of Attorney Bisno's harassing telephone calls and Bisno's lawsuit. Keller also testified the emotional distress was ongoing due to "the criminal case," the lawsuit, and the cross-complaint. And, prior to being served with the lawsuit, Keller testified to having experienced no emotional distress.

## V.    Punitive Damages Award

Bisno challenges the $154,000 award of punitive damages. We agree Keller did not present sufficient evidence of Bisno's financial condition to support the award.

13

"[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109; see *Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 995 ["A plaintiff who seeks punitive damages ordinarily must introduce evidence of a defendant's net worth."].) " 'Although net worth is the most common measure of the defendant's financial condition, it is not the only measure for determining whether punitive damages are excessive in relation to that condition.' " (*Doe v. Lee* (2022) 79 Cal.App.5th 612, 620; see *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 681.) " ' "What is required is evidence of the defendant's ability to pay the damage award," ' " regardless of the measure used. (*Green v. Laibco, LLC* (2011) 192 Cal.App.4th 441, 452; see *Baxter*, at p. 680.) A " 'plaintiff who seeks to recover punitive damages must bear the burden of establishing the defendant's financial condition.' " (*Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 42; see *Adams, supra,* 54 Cal.3d at p. 123.)

" '[I]n most cases, *evidence of earnings or profit alone [is] not sufficient "without examining the liabilities side of the balance sheet." '* [Citation.] ' "What is required is evidence of the defendant's ability to pay the damage award." [Citation.] Thus, there should be some evidence of the defendant's actual wealth. *Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income.' "* (*Doe v. Lee, supra,* 79 Cal.App.5th at p. 621; see *Baxter v. Peterson, supra,* 150 Cal.App.4th at p. 680.)

Keller failed to meet her burden to prove Bisno's ability to pay punitive damages in the amount of $154,000. According to Keller's opening brief, evidence elicited from Bisno on cross-

14

examination established Bisno's "wealth":  (1) Bisno drives a Porsche 911 Turbo car; (2) she and her husband "own" homes in Beverly Hills and Bel Air; and (3) Bisno draws money from an LLC when she needs cash.  Accordingly, Keller asserts, Bisno has "[a]n unlimited source of funds for her lifestyle."

However, Keller presented no evidence or analysis of Bisno's existing or ongoing costs or liabilities.  Instead, during closing argument, Attorney Willoughby made the following remarks without supporting evidence:  Bisno "is driving a $200,000 car," and the Bisnos "had a $30 million house."[6]  The house was lost to foreclosure as part of a "bust-out scheme." Attorney Willoughby explained:  "[Y]ou build the property, you have it, you take out the loans and everything out of the property, and then you let it be foreclosed upon.  You took all the assets out of the property" and hid them in the LLC.

Bisno's uncontroverted testimony was the Beverly Hills home was lost to foreclosure in 2009 and the Bel Air home was in foreclosure at the time of trial.  There is no evidence to suggest Bisno has income enabling her to satisfy the punitive damages award while covering necessary living expenses and paying the compensatory damages.  We therefore reverse the punitive damages award for insufficient evidence.  (*Doe v. Lee, supra*, 79 Cal.App.5th at pp. 623–624.)

---

[6] During Bisno's direct examination, Attorney Willoughby asked her to confirm the Beverly Hills property "was worth "32,000,308,000 [*sic*]."  The trial court sustained Attorney Bisno's objection to the question.  Bisno went on to testify she had no idea of the value of that property.

15

## VI. Special Damages Award for Economic Loss

Bisno contends Keller was prohibited from seeking damages for economic loss in the cross-complaint due to the denial of Keller's request to be awarded victim restitution in the criminal case under Penal Code section 1202.4. Not so.

Penal Code section 1202.4 was enacted to ensure a crime victim who suffers economic loss from the commission of a crime will receive restitution from the convicted perpetrator of that crime. (*Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 443.) As mentioned, Attorney Willoughby in the cross-complaint sought attorney fees as victim restitution in the criminal case. The statute specifies "[a]ctual and reasonable attorney's fees" "accrued by a private entity on behalf of the victim" are reimbursable as economic loss. (Pen. Code, §1202.4, subd. (f)(3)(H).) Such fees are awarded, however, only if they are attributable to the victim's efforts to recover economic loss resulting from the criminal conduct. (*Walker v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 651, 659; *People v. Fulton* (2003) 109 Cal.App.4th 876, 879, 884–885.)

The criminal court denied Attorney Willoughby's request, finding the attorney fees were not incurred because of Keller's attempts to recover economic damages from Bisno's criminal conduct.

*Vigilant Ins. Co. v. Chiu, supra,* 172 Cal.App.4th 438 held a victim has a right to both restitution and a separate civil judgment so long as there is no double recovery. (*Id.* at pp. 445–446; accord, *Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1197.) There is no issue of double recovery here; the criminal court declined to award Keller attorney fees.

16

## DISPOSITION

The judgment on the verdicts for assault and battery is affirmed.  The judgment on the verdict for intentional infliction of emotional distress and attendant damages is reversed.  The award of punitive damages is reversed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



RICHARDSON, J.


17